679 F.2d 784
 Bankr. L. Rep. P 69,085
In re THC FINANCIAL CORP., Debtor.
FALCON CAPITAL CORPORATION SHAREHOLDERS, Plaintiffs-Appellants,
v.
J. Carl OSBORNE, Trustee in Reorganization for THC Financial
Corp., Defendant-Appellee.
 No. 80-4386.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 14, 1982.
Decided June 14, 1982.
 
 Jayson Burton Lumish, Rifkind & Sterling, Inc., Beverly Hills, Cal., for plaintiffs-appellants.
 James J. Feder, Beverly Hills, Cal., for defendant-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before BROWNING, SKOPIL, and NORRIS, Circuit Judges.
 NORRIS, Circuit Judge:
 
 
 1
 Appellants, claimants in the reorganization proceedings of THC Financial Corporation (THCF), seek parity with general unsecured creditors of THCF. The district court, sitting as a reorganization court under the former Bankruptcy Act (11 U.S.C. §§ 501-676 (1976) (repealed 1978)), granted summary judgment for THCF's Trustee in Reorganization, subordinating appellants' claim on the ground that it is equitably inferior to the claims of THCF's general unsecured creditors. We affirm.
 
 I.
 
 2
 Appellants are shareholders of The Hawaii Corporation (THC). They were sole shareholders of Falcon Capital Corporation (FCC), which, on September 13, 1972, merged with THC. Under the merger agreement, appellants sold their FCC shares to THC's subsidiary, Hotay, Inc., in return for 400,000 shares of THC stock. Appellants received 100,000 shares immediately, and the remaining shares were placed in escrow. Appellants were to receive these shares when FCC's earnings reached an "earn-out" level. THC promised that it would not interfere with FCC's ability to maximize its earnings.
 
 
 3
 Appellants allege that THC and its wholly-owned subsidiary, THCF, fraudulently conspired to prevent them from receiving the 300,000 shares of THC stock placed in escrow. Appellants also allege that, pursuant to the fraudulent scheme and subsequent to the merger, THC transferred the assets of FCC's subsidiaries to THCF. This action and later actions by THCF allegedly caused FCC's earnings to fall short of the earn-out level, preventing appellants from receiving the stock still in escrow. In December 1976, THCF entered bankruptcy proceedings.
 
 II.
 
 4
 The issue before us is where appellants' claim should be ranked relative to THCF's general unsecured creditors in the reorganization plan for THCF. The district court held that In re U. S. Financial, Inc., 648 F.2d 515 (9th Cir. 1980), cert. denied, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981) controls the issue and that appellants' claim is subordinate to the claims of THCF's general unsecured creditors.[1] We agree.
 
 
 5
 In U. S. Financial, a stockholder claiming fraud in the issuance of stock sought parity with general unsecured creditors in his claim against the issuing bankrupt. This court held that the stockholder's claim was inferior to the claims of the general unsecured creditors and that the absolute priority rule required subordination of the stockholder's claim.[2] 648 F.2d at 521-25. Under the absolute priority rule, no reorganization plan is valid unless claims against a bankrupt are ranked according to their respective legal and equitable merits. See 6A Collier On Bankruptcy P 11.06 at 208-15 (14th ed. 1977).
 
 
 6
 In U. S. Financial, we noted that "(t)he absolute priority rule is designed to vindicate the reasonable expectations formed by claimants when their investments or loans were made." 648 F.2d at 519. We then compared the differing expectations of stockholders and creditors: "(s)hareholders bargain for equity-type rewards in exchange for equity-type risks, but general creditors do not." Id. at 520. When the stockholder in U. S. Financial purchased his stock, he bargained for equity-type profits and risks, including the risk of fraud in the inducement to purchase. Id. Granting the stockholder parity with the general creditors of U. S. Financial would have decreased the creditors' share of U. S. Financial assets, thus imposing on the creditors the cost of the stockholder's risk. We held that the absolute priority rule bars such an inequitable result. Id. at 524.[3]
 
 III.
 
 7
 Appellants concede that if their claim were against THC for fraud in the issuance of stock, it would be subordinate to the claims of THC's general creditors under U. S. Financial.[4] Brief of Plaintiffs-Appellants at 2. They seek to distinguish themselves from the U. S. Financial stockholder by characterizing their claim as one against the issuer's subsidiary, THCF, for an independent tort. We conclude that the policy considerations that led us to subordinate the stockholder's claim in U. S. Financial apply with equal force.
 
 
 8
 Like the stockholder in U. S. Financial, appellants bargained for equity-type profits and equity-type risks when they purchased their stock. One such risk was THC's fraud. See U. S. Financial, 648 F.2d at 520. Another was the risk that, in carrying out its fraudulent scheme, THC might use a wholly-owned subsidiary to effectuate its plans. A wholly-owned subsidiary is, with allowances for corporate formalities, completely controlled by its parent. While the stockholder does not necessarily assume the risk that an independent third-party might join the fraud, the third party here is a member of the corporate family, a wholly-owned subsidiary of the issuer. We fail to see why the relative equitable position of a defrauded stockholder should be enhanced simply because the issuer elects to carry out its fraudulent scheme via the common corporate practice of doing business through a wholly-owned subsidiary.
 
 
 9
 Moreover, were appellants accorded parity with THCF's general unsecured creditors, they would be placed ahead of THC creditors in the line for THC assets, thus upsetting the expectations of the THC creditors. As the court in In re Stirling Homex Corp., 579 F.2d 206, 214 (2d Cir. 1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979) noted, creditors expect priority over stockholders in their claims against the bankrupt. The stockholder assures the creditor that he is protected from insolvency by the so-called "equity-cushion" created by the stockholder's purchase of securities in the bankrupt. Id. It is this assurance that induces the creditor to extend credit to the bankrupt, id., and it is inequitable for the stockholder to claim against the equity cushion in competition with creditors when bankruptcy occurs.
 
 
 10
 The stock of THCF is an asset of THC. THC's claims on THCF, however, are subordinate to the interests of THCF's creditors. Thus, THC's creditors are subordinate to THCF's creditors in the line for THCF assets. As shareholders of THC, appellants should stand behind THC creditors in the line for THCF assets. As the court below aptly noted:
 
 
 11
 If stockholders were allowed to convert their stockholder/equity claims into creditor claims simply by alleging a joint conspiracy between the parent and subsidiary ... the policy, as well as the result, of Stirling Homex could be avoided whenever the allegedly defrauded stockholders were lucky enough to have invested in a company organized with separate subsidiaries.
 
 
 12
 Where a corporation is organized as a single entity, all stockholder claims must be brought directly against the issuer; there are no opportunities to subvert the absolute priority rule. Under a rule that would grant appellants parity with the general creditors of THCF, creditors could find their equity cushion depleted by stockholder claims against subsidiaries of the issuer. We do not believe that the use of separate corporate forms is a valid reason for granting stockholders priority over general creditors.
 
 IV.
 
 13
 Finally, appellants argue that U. S. Financial directs subordination only of claims for fraudulent issuance of stock; they contend that claims for other torts-e.g., a stockholder injury caused by an employee's negligence-should not be subordinated merely because the claimant is a stockholder. We do not reach this issue. Although appellants characterize their claim as one for "interference with contractual relations," "inducement of (b)reach of (c) ontract" and/or "conspiracy to defraud," their claim is essentially that of defrauded stockholders, not victims of an independent tort.[5]
 
 
 14
 In any event, we see no principled basis for distinguishing the claim asserted by appellants and the claim asserted in U. S. Financial. Participation of a wholly-owned subsidiary in its parent's fraud is an equity risk assumed by the purchaser of stock. Where the allegedly independent tortfeasor is a wholly-owned subsidiary of the issuer, and the allegedly independent tort is participation in the parent's scheme to defraud the stockholder, the stockholder's claim against the subsidiary is indistinguishable from a claim against the issuer. Even if the fraudulent acts of THC and THCF give rise to more than one cause of action, the absolute priority rule directs subordination in each case. We hold that appellants' claim must be subordinated to the claims of THCF's depositors. The judgment is AFFIRMED.
 
 
 
 [1]
 There are approximately 14,000 general unsecured creditors with claims totalling over $41 million. Appellants' claim totals.$4.5 million
 
 
 [2]
 Congress has now expressly provided that the claims of defrauded stockholders are subordinate to the claims of general unsecured creditors. 11 U.S.C. § 510(b) (Supp. III 1979). See U. S. Financial, 648 F.2d at 525
 
 
 [3]
 In determining that the stockholder's claim was inferior to the claims of the general unsecured creditors of U. S. Financial, this court considered several additional factors. We noted that the stockholder had profited from the sale of his stock and that his expectations were thus more the expectations of an equity investor than a credit investor. 648 F.2d at 520. We also found that, by agreeing to a form of financial transaction that made the transaction appear more profitable to the corporation than it actually was, the stockholder enabled the corporation to defraud the general creditors. Id. at 520-21. These factors are not present here. The question of subordination, however, is a flexible one. See 6 Collier on Bankruptcy P 9.15 14th Ed. (1977) (reorganization courts may subordinate claims to prevent injustice). As in U. S. Financial, we do not hold "that a defrauded shareholder may never be classified with general unsecured creditors." 648 F.2d at 524. For the reasons explained in our opinion, however, we believe that appellants' claim is subordinate to that of THCF's general creditors
 
 
 [4]
 Because appellants alleged that THC and THCF are alter egos, Amended Proof of Claim at P 3A(13), the court below found that appellants' claim was directed against the issuer, THC. The applicability of the alter ego theory to this case is remote at best, and we do not decide the case on the basis of appellants' alter ego allegation
 
 
 [5]
 In their Amended Proof of Claim, appellants allege that "(a)s a result (of misrepresentations made by THC in furtherance of the THC-THCF conspiracy), the Falcon Shareholders were damaged in exchanging their shares ... for inadequate consideration." Id. at P 3A(4). Thus, appellants allege, essentially, that they were fraudulently induced to purchase THC stock
 As the district court noted, all of appellants' theories of recovery are based on the same set of operative facts-the scheme by THC and THCF to defraud appellants. Their contention that THCF's actions subsequent to the merger gave rise to a cause of action separate from any fraud in the merger is belied by their own Amended Proof of Claim, where they allege that THCF acted "pursuant to the continuing plan and scheme devised prior to the merger and effectuated subsequent thereto by (THC and THCF)." Id. at P 3A(9) (emphasis added). We cannot agree with appellants that the fraudulent misrepresentations of THC and the subsequent actions of THCF create two separate causes of action.