**In re AMAREX, INC., et al., Debtors.**

**Bankruptcy No. 82–2335–A.**

United States Bankruptcy Court,
W.D. Oklahoma.

Oct. 18, 1985.

Patricia M. Hynes and Edwin Mills of Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for class action plaintiffs.

John Hermes and Louis Price of McAfee & Taft, Oklahoma City, Okl., and Bob Jones of Thompson & Knight, Dallas, Tex., for Trade Creditors Committee.

Michael Dalton of Hutcheson & Grundy, Houston, Tex., for Limited Partners Committee.

Frank Monroe of Sheinfeld, Maley & Kay, Houston, Tex., for Continental Illinois Nat. Bank and Trust Co. of Chicago, The First Nat. Bank and Trust Co. of Oklahoma City, InterFirst Bank Dallas, N.A., and Security Pacific Nat. Bank.

John Buck of Bracewell & Patterson, Houston, Tex., for Templeton Energy, Inc.

John King of Fulbright & Jaworski, Houston, Tex., for Amarex, Inc.

## MEMORANDUM OF DECISION

RICHARD L. BOHANON, Bankruptcy Judge.

Amarex is general partner of several oil and gas drilling partnerships. It and the

partnerships are debtors in possession. Pursuant to 11 U.S.C. § 510(b) (Supp.1985) the proponent of a plan of reorganization now seeks to subordinate certain claims of the limited partners, who are plaintiffs in a class action complaint pending in the United States District Court for the Southern District of New York, to general unsecured claims.[1] The class action plaintiffs are limited partners who purport to represent the interests of all limited partners in six partnerships formed after 1979. The plan provides for subordination so the issue has been heard as a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure. *See* Rule 7001(8) of the Federal Rules of Bankruptcy Procedure.

The proponents of the plan contend that claims of the class action plaintiffs are subject to subordination under 11 U.S.C. § 510(b).[2] The legislative history pertaining to that section provides, "[i]f the security is an equity security, the damages or rescission claim is subordinated to all creditors and treated the same as equity security itself." H.R. No. 95–595, 95th Cong., 1st Sess. 359 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 74 (1978), U.S. Code Cong. & Admin. News 1978, 5787, 5860, 6314, 6315. It "requires the court to subordinate in payment any claim for rescission of a purchase or sale of a security of the debtor or of an affiliate, or for damages arising from the purchase or sale of such a security ...." *Id.*

The plan proponents introduced into evidence the complaint filed on behalf of the class action plaintiffs. It alleges violations of sections 5, 12(1)–(2), 15 and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77 *l* (1)–(2), 77o, 77q(a) (1981), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1981), and Rule 10b–5 of the Rules of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5 (1985). Included also are allegations of common law fraud, claims on contract rights and breach of fiduciary duty. The debtors are not parties to the complaint which names certain individuals and other entitles who allegedly participated in the offerings. The plaintiff-partners have filed similar proofs of claim in the bankruptcy cases.

Counsel for the class action plaintiffs represented that certain of their claims stem from failure of Amarex, as general partner of the limited partnerships, to make capital contributions, for failure to make contractual interest payments, for the commingling of funds, use of those funds for non-partnership purposes and other breaches of fiduciary and contractual obligations.

■ The class action plaintiffs first contend that subordination of these claims is improper for the plan does not advise them that their claims would be subordinated. This argument fails, however, for the plan clearly provides that "claims of all parties covered by section 510(b) ... for rescission or damages", will "receive nothing, and their claims shall be discharged as against reorganized Amarex and the post-1977 partnerships."

The issue for consideration is thus whether the bankruptcy claims of the class action plaintiffs are excepted from the subordination requirement. They contend this should be the case for, in addition to rescission and damages for violation of securities laws, their complaint also seeks damages for breach of contract and common

---

1. A civil action has been filed in the United States District Court for the Southern District of New York entitled *In re Amarex Securities Litigation, Reginald Wurzburg, et al. v. Clinton C. Cornelius, et al.* Civil Action Nos. 83–CIV–0628 (PNL); 83–CIV–0794 (PNL); and 83–0589 CBM (JRx). The debtors were not named as party defendants in the lawsuit because of the stay provisions of 11 U.S.C. § 362 (1979 & Supp. 1985). The defendants are insiders, control persons, professionals and underwriters of Amarex's securities.

2. Title 11 U.S.C. § 510(b) was amended by The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333. The amendment, however, incorporates the language from the previous version of that subsection and apparently clarifies the intent of Congress concerning the subordination of claims arising from the purchase or sale of a security, and adds other provisions dealing with reimbursement and contribution.

law fraud. The argument is that inclusion of these other allegations in the complaint works to prevent subordination of the same claims in the bankruptcy case. Put in other words the issue is whether the contract and fraud claims seek "damages arising from the purchase or sale of such a security...." 11 U.S.C. § 510(b).

Prior to the enactment of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549, the issue of subordination of claims arising from violation of securities laws was dealt with as an element of equitable subordination. *See Lambert v. Flight Transportation Corp. (In re Flight Transportation Corp. Securities Litigation )*, 730 F.2d 1128, 1136–38 (8th Cir.1984) *cert. denied,* — U.S. —, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *Falcon Capital Corp. Shareholders v. Osborne (In re THC Financial Corp.)*, 679 F.2d 784, 785–87 (9th Cir.1982); *Kelce v. U.S. Financial Incorp. (In re U.S. Financial Incorp.)*, 648 F.2d 515, 519–21 (9th Cir.1980) *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981); *Jezarian v. Raichle (Matter of Stirling Homex Corp.)*, 579 F.2d 206, 210–15 (2d Cir.1978) *cert. denied,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979); *see also Matter of Four Seasons Nursing Centers of America, Inc.,* 472 F.2d 744 (10th Cir.1972); *Scherk v. Newton,* 152 F.2d 747 (10th Cir.1945).

■ Generally equitable subordination results from the wrongdoing of the claimant. *See Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Because an equity security holder may not be guilty of wrongdoing, Congress made subordination of securities laws claims mandatory with the passage of 11 U.S.C. § 510(b). Subordination under § 510(b) is automatic and not discretionary. 3 *Collier on Bankruptcy* ¶ 510.04 (15th ed.1985).

In *Jezarian v. Raichle (Matter of Stirling Homex Corp.)*, 579 F.2d 206, 214 (2d Cir.1978) *cert. denied,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979), it was explained that "there are two entirely distinct types of risks taken by creditors and investors when they decide to do business with a

corporation: the risk of insolvency of the debtor and the risk of unlawful issuance of securities. It is appropriate that both the general creditors and the investors assume the risk of insolvency. As between the creditors and the investors, however, only the investors should be forced to bear the risk of illegality in the issuance of stock." (citations omitted). The *Stirling Homex* court reviewed the report on H.R. 8200 of the House Committee on the Judiciary, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) recognizing the intention of Congress to codify previous case law such as *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) and *Taylor v. Standard Gas & Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1938). *Id.*

The report rationalized that "general creditors have not had the potential benefit of the proceeds of the enterprise deriving from ownership of securities and it is inequitable to permit shareholders that have had this potential benefit to shift the loss to general creditors." *Id.* at 215.

■ The passage of 11 U.S.C. § 510(b) was an express act by Congress to provide that claims of defrauded shareholders be classified below those of general unsecured creditors. *Kelce v. U.S. Financial Incorp. (In re U.S. Financial Incorp.)* 648 F.2d 515, 525 (9th Cir.1980) *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981). In short, "[s]hareholders bargain for equity-type rewards in exchange for equity-type risks, but general creditors do not...." *Id.* at 520; *Falcon Capital Corp. Shareholders v. Osborne (In re THC Financial Corp.),* 679 F.2d 784 (9th Cir. 1982). The equity interest holders, not the general creditors, should bear the risk of illegality in securities offerings. *Lambert v. Flight Transportation Corp. (In re Flight Transportation Corp. Securities Litigation)* 730 F.2d 1128, 1137 (8th Cir. 1984) *cert. denied,* — U.S. —, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985).

The only question remaining concerns whether the other common law claims of the class action litigants escape subordination under section 510(b). The class action

plaintiffs contend these are not claims arising from rescission or damages relating to the purchase or sale of a security.

This argument is answered by the language contained in section 510(b). In addition to subordination of rescission claims the section also subordinates claims "for damages arising from the purchase or sale of such a security...." These plaintiffs would have no claims against the debtor but for their purchase of the securities, and had the purchase not occurred they would not have the pendant common law claims. If, on the other hand, one of the partners had also independently extended credit to Amarex this claim would not arise from the purchase or sale of the security and would not be subordinated. It clearly appears this is the distinction intended by Congress and relates to the risk factor considered in the cases decided prior to adoption of the 1978 Bankruptcy Code. If the holders possess their claims because they assumed a risk in seeking a profit those claims are subordinate to claims of persons who sought simple payment of credit extended to the debtor. The fact that the class action plaintiffs, in addition to rescission, claim damages for fraud and breach of contract does not alter the circumstance that all their claims arise from purchase of the securities. *See Falcon Capital Corp.*, 679 F.2d at 787.

Accordingly, the claims of the class action plaintiffs are held to be subordinate to those of the other creditors.[3]

---

**3.** The plan provides for allowance of certain claims of interest of partners in post-1977 partnerships who have voted to accept the plan. This decision does not purport to affect allowance of those claims.

This memorandum of decision is entered to supplement the findings of fact, conclusions of law and order entered in open court on September 24, 1985.