In re AMAREX, INC., et al., Debtors.

The LIMITED PARTNERS' COMMIT-
TEE OF AMAREX, INC., and the
Class Action Plaintiffs, Appellants,

v.

The OFFICIAL TRADE CREDITORS'
COMMITTEE OF AMAREX,
INC., Appellees.

No. CIV–86–1250–W.

Bankruptcy No. BK–82–2335–A.

United States District Court,
W.D. Oklahoma.

June 30, 1987.

Richard E. Coulson, Kline & Kline, Okla-
homa City, Okl., John King, Dallas, Tex.,
Randall S. Davidson, Templeton Energy,
Shreveport, La., Gregor P. von Schaum-
burg, S.E.C., Chicago, Ill., Davidson & Nix,
Shreveport, La., Don R. Nicholson II, Ea-
gleton and Nicholson, Oklahoma City, Okl.,
for debtors.

Mike Dalton, Sarah Stone, Hutcheson &
Grundy, Houston, Tex., Louis Price, John
Hermes, McAfee & Taft, Oklahoma City,
Okl., William Neary and David L. Camp-
bell, Robert Jones, Thompson & Knight,
Dallas, Tex., Patricia Hynes, Edwin Mills,
Milberg, Weiss, Bershad, Spechthrie & Ler-
ach, New York City, for creditor.

## OPINION

LEE R. WEST, District Judge.

On October 18, 1985, as amended on De-
cember 10, 1986, The Honorable Richard L.
Bohanon, United States Bankruptcy Judge
for the Western District of Oklahoma, is-
sued the following finding:

"Accordingly, the claims of the class ac-
tion plaintiffs, as well as the claims as-
serted by all other limited partners in
these bankruptcy cases, are held to be
subordinate to those of the other credi-
tors."

Memorandum of Decision at 6 (footnote
omitted) (as amended by Correction Order
of December 10, 1986).

Such finding prompted the instant ap-
peals by The Official Limited Partners'
Committee of Amarex, Inc. (the limited
partners), and by certain parties involved in
this action and class action litigation pend-
ing in the United States District Court for
the Southern District of New York (the
class action plaintiffs). The appeals were
consolidated by this Court since the issues
raised by the parties are substantially sim-
ilar. The Securities and Exchange Com-
mission has joined in these consolidated
appeals and has entered its appearance
pursuant to 11 U.S.C. § 1109(a). The Offi-
cial Trade Creditors' Committee of Ama-
rex, Inc., the appellee, has submitted argu-
ment and authority in opposition to the

argument and authority submitted by the aforementioned parties.

In examining the parties' submissions, the Court finds that oral argument would not be of material assistance in resolving the issues raised on appeal. Thus all requests and motions seeking the same are denied. The issues before the Court are:

(1) Did the Bankruptcy Court err in ruling that the pendent state law claims of the class action plaintiffs and the limited partners are subordinated under 11 U.S.C. § 510(b)?

(2) Did the Bankruptcy Court deny the limited partners their right to due process by failing to provide them with notice and a hearing prior to subordination of their claims?

While the parties have not agreed on the standard of review which this Court must use in evaluating the findings and conclusions of the Bankruptcy Court, under either the *de novo* standard reserved for questions of law or mixed questions of law and fact and urged as proper by the appellants or the clearly erroneous standard reserved for questions of fact and urged as proper by the appellee, the Court finds that its conclusions are the same.

On December 2, 1982, an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code (Bankruptcy Code) was filed by certain creditors against Amarex, Inc. (Amarex), in the United States Bankruptcy Court for the Western District of Oklahoma. On December 3, 1982, the matter was converted to a proceeding under Chapter 11 of the Bankruptcy Code and Amarex affiliates and subsidiaries joined the proceeding by filing voluntary petitions for relief under Chapter 11.

At that time, Amarex was a general partner in Amarex Private Drilling Programs, Ltd. 1978 through 1982 (the Partnerships) and conducted much of its business through these Partnerships. In March and April 1984, the Partnerships also sought relief under Chapter 11 and for administrative purposes, these actions were consolidated with the proceedings involving Amarex and its subsidiaries and affiliates.

There are approximately 720 individuals and/or entities who are limited partners in the Partnerships and who comprise in representative number, the appellant, The Official Limited Partners' Committee of Amarex, Inc. In November 1983, the limited partners filed Proofs of Claim in these bankruptcy proceedings against Amarex and related enterprises for damages resulting from violations of federal securities laws in connection with the issuance and sale of the limited partnership units and for damages for alleged mismanagement of the Partnerships after the issuance and sale of such units resulting from breach of contract, breach of fiduciary duty, negligence and common law fraud. The Proofs of Claim, while varying to some degree, read in representative part:

(1) Damages resulting from the breach of Amarex, as general partner of the Partnership, of contractual obligations and fiduciary duties to the Limited Partners, the exact amount of which cannot be determined without further investigation, and which may include damages for ... acts of negligence in the management of the Partnership....

(2) Damages resulting from the failure of Amarex to advance the interest due on the production loans and subscription loans of the Limited Partners in accordance with its agreement....

(3) Damages resulting from the failure of Amarex to make payments, when due, on the Partnership's equipment loan....

(4) Damages resulting from material misrepresentations and/or material omissions or other fraudulent conduct in connection with the sale of the Limited Partnership interest to the Limited Partners under the Securities Act of 1983, the Securities Exchange Act of 1934, the state securities act of the jurisdiction in which the securities were sold and actions under common law for fraud and misrepresentation.

(5) All amounts due and payable to the Limited Partners under the Partnership Agreement.

Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1978; *e.g.*, Exhibit B to Proof

of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1978–A; Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1979; Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1980; Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1980–2; Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1981 (omits claim for damages for item (3)); Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1981–2 (omits claim for damages for item (3)); Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1981–3 (omits claim for damages for item (3)); Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1982 (omits claim for damages for item (3); seeks rescission of purchase of limited partnership units under Section 12(1) of the Securities Act of 1933 and similar remedies under state securities act of jurisdiction in which securities were sold and seeks damages resulting from Amarex's failure to require First National Bank of Minneapolis to treat all limited partners in equitable manner).

Thirteen of the aforementioned limited partners are also plaintiffs in a class action lawsuit pending in the United States District Court for the Southern District of New York. *In re Amarex Securities Litigation,* Nos. 83–CIV–628 (PNL), 83–CIV–794 (PNL), 83–589 CMB (JRX). No class has yet been certified in that litigation but for purposes of the instant appeals, this collection of individuals and entities have been designated the "class action plaintiffs."

In the New York litigation, the defendants are the officers and directors of Amarex and related entities as well as others who allegedly aided and abetted the alleged wrongdoing. Amarex and its subsidiaries and affiliates are not named as parties defendant due to the automatic stay imposed by 11 U.S.C. § 362(a). The class action plaintiffs have alleged in that lawsuit that the various defendants in connection with the issuance and sale of the limited partnership units violated the Securities Act of 1933 and the Securities Exchange Act of 1934. The class action plaintiffs have also alleged that the conduct which forms the basis of the defendants' liability under these federal securities laws, "constitutes a violation of the common law of fraud." First Consolidated and Amended Class Action Complaint, Count V at 52. The class action plaintiffs have also alleged a cause of action for negligence against defendant Ernst & Whinney, a firm of certified public accountants which audited the financial statements of Amarex and the Partnerships, and a cause of action for payment of a debt against defendant Oklahoma Bank. *Id.* at 52–54.

The transcripts in the record reveal confusion between representation by counsel of the class action plaintiffs and the limited partners and which claims and causes of action and arguments are being asserted by each. One source of the confusion may lie in the fact that the thirteen class action plaintiffs not only joined in the filing in November 1983 of the aforementioned Proofs of Claim because they too are limited partners but also filed *additional* Proofs of Claims in the bankruptcy proceedings in December 1983. Attached to these additional Proofs of Claim are copies of their First Consolidated and Amended Class Action Complaint and thus, while they have alleged common law claims in their initial Proofs of Claim, the only charges in the additional Proofs of Claim appear from the plain language of the complaint to be violations of federal securities laws and a common law fraud claim which arises from, and is connected with, the issuance and sale of the limited partnership units. *E.g.,* Class Action Plaintiffs' Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1980; Class Action Plaintiffs' Exhibit B to Proof of Claim of Limited Partners in Amarex Private Drilling Program, Ltd.–1982.

In summer 1985, The Official Trade Creditors' Committee for Amarex, Inc. (Trade Creditors), the appellee herein, filed a Third Amended Joint Plan of Reorganiza-

tion (the Trade Creditors Plan), one of two competing plans of reorganization in the Amarex bankruptcy proceedings. The Trade Creditors Plan called for Templeton Energy, Inc. (Templeton), to acquire all assets of Amarex and related corporate debtors. The Partnerships were to remain as separate and independent entities except that reorganized Amarex, now as a wholly-owned subsidiary of Templeton, was to be the general partner of the Partnerships. The Trade Creditors Plan also contemplated distribution to the unsecured creditors of Amarex and the Partnerships of 11,200,000 shares of Templeton common stock.

On September 19, 1985, the Bankruptcy Court issued an Order setting a hearing on the issue of subordination on September 24, 1985. While counsel for the thirteen class action plaintiffs received a copy of the Order, neither the limited partners nor counsel for the same were given notice of the hearing and thus did not appear.

On September 24, 1985, the Bankruptcy Court entertained arguments by the Trade Creditors on whether the claims of the class action plaintiffs should be subordinated under 11 U.S.C. § 510(b). The class action plaintiffs argued that discussion of the subordination issue was premature and should occur only after confirmation of a plan. They also drew a distinction between their claims for violations of federal securities laws and their claims for violations of state law and argued that subordination of the latter under section 510(b) was inappropriate.

At the conclusion of the hearing, the Bankruptcy Court ruled that *all* claims asserted by the class action plaintiffs would be subordinated under section 510(b) based on the Bankruptcy Court's conclusion that the class action plaintiffs "would have no claim *but for* the purchase and sale of the limited partnership interest...." Transcript of Hearing (September 24, 1985) at 57, lines 20–21 (emphasis added). On October 18, 1985, the Bankruptcy Court issued a Memorandum of Decision which reflected and supplemented its prior oral ruling regarding subordination of the class action

plaintiffs' actions. The Bankruptcy Court affirmed its conclusion that the class action plaintiffs "would have no claims against the debtor but for their purchase of the securities, and had the purchase not occurred they would not have the pendent common law claims." Memorandum of Decision (October 18, 1985) at 5 (as amended by Correction Order of December 10, 1986, to include *all* claims of *all* limited partners).

The Bankruptcy Court found in line with other jurisdictions that shareholders and not general creditors should bear the risk of illegality in securities offerings, *id.*, but found further that this "risk factor" supported its expansive construction of section 510(b). *Id.* at 6. The Bankruptcy Court stated that if the securityholders "possess their claims because they assumed a risk in seeking a profit those claims are subordinate to claims of persons who sought simple payment of credit extended to the debtor." *Id.* The lower court relied in part on *Falcon Capital Corporation v. Osborne (In re THC Financial Corporation),* 679 F.2d 784 (9th Cir.1982), wherein the appellate court found it unnecessary to resolve whether claims not couched in terms of securities fraud would be subordinated under section 510(b) because it determined that all claims were essentially those of defrauded stockholders, and not those of victims of independent torts. *Id.* at 787. The Ninth Circuit noted that all theories of recovery were based on the same set of operative facts and based on a continuing plan and scheme. *Id.* n. 5.

On October 29, 1985, the limited partners filed a Motion for New Trial and alternate Motion to Amend Order and Memorandum of Decision and argued that the Bankruptcy Court erred in its determination that the common law claims of the class action plaintiffs should be subordinated under section 510(b) particularly in light of the fact that the limited partners were not given notice of the hearing or given an opportunity to address the issue. The post-trial motions were heard on November 22, 1985, and the Bankruptcy Court in denying the motions again affirmed its position that the "but for" test was applicable. Transcript

of Hearing (November 22, 1985) at 306, lines 15–16; Order Denying New Trial (dated December 16, 1985, and filed December 17, 1985).

Section 510(b) reads in pertinent part that

> "a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security ... shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security ..."

11 U.S.C. § 510(b) (as amended 1984).

The limited partners and the class action plaintiffs do not deny that section 510 requires subordination of their claims for alleged violations of securities laws because such claims arise out of the purchase or sale of a security. They do however dispute that their state law claims based on events which occurred in connection with Amarex's subsequent actions as operator and general partner of the Partnerships and which are stated in the initial Proofs of Claim filed on behalf of all limited partners including the thirteen class action plaintiffs are likewise subject to subordination under this section.

Section 510(b) as enacted closely tracks the version proposed by the Commission on the Bankruptcy Laws of the United States. Commission Proposal § 4–406 in describing those claims which are subordinated in payment to all other nonsubordinated but allowable claims listed

> "any claim for rescission of the purchase of securities issued by the debtor corporation or for damages resulting from the purchase or sale of such securities."

Section 4–406(a)(1), Report of the Commission on the Bankruptcy Laws of the United States, H.R.Rep. 137, Part II, 93d Cong., 1st Sess. 115 (1973). The Notes issued in conjunction with this particular section indicate that it was designed to subordinate

> "claims by holders of securities of a debtor corporation that are based on federal and state securities legislation, rules pursuant thereto, and similar laws. The subordination relates to the claim and

not to the claimant. Thus it does not affect the rank of any other claims, e.g., a wage claim, which a security holder ... may have against a debtor corporation."

Notes, *id.* at 116.

This emphasis on subordination of claims based on violations of securities laws is also found in the Report issued on September 8, 1977, by the House of Representatives Committee on the Judiciary, which had undertaken the task of establishing uniform bankruptcy laws. With regard to section 510(b), the Report read in part that

> "[a] difficulty policy question to be resolved in a business bankruptcy concerns the relative status of a security holder who seeks to rescind his purchase of securities or to sue for damages based on such a purchase: Should he be treated as a general unsecured creditor based on his tort claim for rescission, or should his claim be subordinated?"

H.R.Rep. No. 595, 95th Cong., 1st Sess. 194 (1977). The Report cited approvingly to an article written by the principal commentators on the subject of subordination and noted that "[t]he argument for mandatory subordination is best described by Professors Slain and Kripke," *id.*, and that section 510(b) "generally adopts the Slain/Kripke position, but does so in a manner that is administratively more workable." *Id.* at 196 (citing Slain & Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Security Holders and the Issuer's Creditors,* 48 N.Y.U.L.Rev. 261 (1973)).

It was the position of Professors John J. Slain and Homer Kripke that while both security holders and general creditors assume the risk of insolvency and enterprise failure, the risk of illegality in the issuance of securities should be born by those investing in the securities. *Id.* at 286–88. It is this "risk allocation" to which the Bankruptcy Court referred in its Memorandum of Decision in the instant cases and which section 510(b) incorporates and embodies.

Section 510(b) reveals a Congressional desire to shift to the shareholders the risk of fraud in the *issuance* and *sale* of a

security—no more. The legislative history expressly focuses on the initial illegality and thus the automatic subordination required by section 510(b) should extend no farther. The Bankruptcy Court's expansive interpretation of section 510(b) ignores the clear language of section 510(b), its underlying policies and the purposes for which it was enacted. Section 510(b) pertains only to claims based upon the alleged wrongful issuance and sale of the security and does not encompass claims based upon conduct by the issuer of the security which occurred after this event. Such construction gives expression to the legislative comment that it is the nature of the claim, and not the status of the claimant, that is significant.

The Proofs of Claim filed on behalf of all limited partners in November 1983 very clearly demonstrate that there are common law claims which arise from conduct which occurred subsequent to, and which do not arise from, the issuance and sale of the securities. On the other than, the additional Proofs of Claim filed by the thirteen class action plaintiffs in December 1983, which do no more than incorporate the claims contained in the First Amended and Consolidated Class Action Complaint, demonstrate that the only causes of action stated therein are for alleged securities fraud and for common law fraud which arises from the same conduct which forms the basis of the alleged securities violations. There are no true independent common law claims being asserted in these additional proofs of claims which escape the mandatory subordination of section 510(b).

The Trade Creditors have urged the Court to consider only these additional Proofs of Claim as evidence of the nature of the claims being asserted by the class action plaintiffs; such argument however ignores the initial Proofs of Claim filed by such parties. The class action plaintiffs on the other hand have urged the Court to read into their stated causes of action certain state law claims. Such allegations are advanced only for purposes of establishing the conduct of the defendants with regard to the alleged securities violations and are not set forth as separate causes of action.

In this regard, the Bankruptcy Court's reliance on *Falcon Capital Corporation* is well placed to the extent that the class action plaintiffs cannot transform their claims for securities violations into state law claims by artful pleading.

In conclusion the Court finds that only claims which are based upon alleged violations of securities laws and which arise from the purchase and sale of such securities fall within the scope of section 510(b). All other claims evidenced by the Proofs of Claim filed in November 1983 in these proceedings are not subject to the mandatory subordination of section 510(b) and rulings by the Bankruptcy Court to the contrary are erroneous as a matter of law. Since such finding is dispositive of these appeals, the Court has not addressed the claims of denial of due process or the claims pertaining to the alleged inadequacies of the disclosure statement or this Court's jurisdiction over such claims.

It is hereby ORDERED that the Bankruptcy Court's decision of October 18, 1985, as amended December 10, 1986, is REVERSED and that this action is REMANDED to the Bankruptcy Court for the Western District of Oklahoma for proceedings not inconsistent with the Court's findings herein.