**In re LENCO, INC., Debtor.**

**Bankruptcy No. 89–10317–BSS.**

United States Bankruptcy Court, E.D. Missouri, Southeastern Division.

July 5, 1990.

---

1. Rents are considered cash collateral pursuant to 11 U.S.C. § 363(a).

Karen L. Handorf, Cynthia Caldwell Weglicki, Samuel Teitelman, Trial Attys., U.S. Dept. of Labor, Office of the Sol., Plan Benefits Sec. Div., Washington, D.C.

Norman W. Pressman, St. Louis, Mo., for Unsecured Creditors Committee.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

Pursuant to section 510(b) of the Bankruptcy Code, the Unsecured Creditors Committee (the "Committee") filed a motion to subordinate the claim of the United States Department of Labor (the "DOL"), which it brought on behalf of the Lenco, Incorporated Employees' Stock Ownership Plan and Trust (the "ESOP")[1]. The DOL argues that because its claim is related to the ESOP's subsequent purchase of Lenco stock from a third party rather than an original issuance of the stock, it may not be subordinated pursuant to *In re Amarex*, 78 B.R. 605 (W.D.Ok.1987). Additionally, the DOL argues that because its cause of ac-

tion is based upon several alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1371, rather than state or federal securities laws, it does not concern section 510(b) and cannot be subordinated pursuant to that section.

### JURISDICTION

This Court has jurisdiction over the subject matter of the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The Parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(O).

### FACTS

The facts in this case are the subject of a stipulation between the parties. On January 24, 1984, Jerry Ford offered to purchase all of the outstanding stock of Lenco, the debtor, for $10,000,000.00. This sale was subsequently approved by Lenco's board of directors (the "Board") at a special meeting. In an effort to finance the sale to Mr. Ford, Lenco obtained a $5,250,-000.00 loan from UnibancTrust Company (the "Unibanc Loan"). In order to allow him to acquire the stock owned by the ESOP[2], Lenco loaned Mr. Ford $1,530,-000.00 of the Unibanc Loan proceeds. Lenco used the remaining proceeds of the Unibanc Loan to repurchase 228,285 shares of its stock at approximately $19.10 per share.[3] These shares were retired as treasury shares. In addition to the $1,530,-000.00 loaned to him by Lenco, Mr. Ford contributed $75,000 of his personal funds and obtained a $1,700,000.00 loan from Ex-

---

1. Pursuant to 29 U.S.C. § 1132(h) and 11 U.S.C. § 1109(b), the Secretary of Labor has intervened in an action brought by a plan participant, beneficiary, or fiduciary. The parties have agreed that no individual who has filed a proof of claim based upon losses suffered as a result of the alleged breaches of fiduciary duty by the debtor is entitled to a double recovery. Thus, the DOL has agreed that it will not object to the disallowance of any individual claims which are deemed duplicative of the DOL's claim.

2. On April 5, 1990, the ESOP's assets consisted of 170,619 shares of Class B Lenco stock and a small amount of cash.

3. This share price was derived by dividing the $10,000,000 Lenco purchase price, representing its asset value, by the number of shares then outstanding.

change Financial Services ("Exchange"), the parent of Jackson Exchange Bank. With these funds Mr. Ford purchased, for approximately $19.10 per share, 113,721 shares of Lenco stock from various individuals and 170,619 shares of stock from the ESOP on April 5, 1984. On that same day, Mr. Ford was elected Chairman of the Board and Chief Executive Officer, and the ESOP committee, acting under the direction of Mr. Ford, appointed Paul A. Mueller, Jr. as interim trustee of the ESOP.

On April 6, 1984, Mr. Ford sold 178,019 shares of Lenco stock to the ESOP at $19.10 per share, for a total purchase price of $3,399,389.95. Mr. Ford used the proceeds from this sale to repay the $1,700,000 Exchange loan in full, repay $690,000 of the $1,530,000 loaned by Lenco, and to repurchase shares from other individual shareholders. The latter transaction gave Mr. Ford control of the majority of Lenco's outstanding shares. At the time of this transaction, newly-appointed trustee Mr. Mueller acted on behalf of the ESOP. The ESOP's fiduciaries did not obtain a valuation of the Lenco stock prior to the ESOP's April 6 purchase and the parties stipulate that the ESOP's purchase of that stock from Mr. Ford was for more than adequate consideration under applicable law and would subject Lenco to liability resulting in a distribution to the ESOP absent the subordination of the claim.

The Committee agrees that the DOL has a valid claim for an uncertain amount. However, through its Motion to Subordinate Claims of the Department of Labor, the Committee argues that the DOL claim should be subordinated to the claims of all other unsecured creditors pursuant to 11 U.S.C. § 510(b). More specifically, the Committee contends that because the DOL's claim arises directly from the purchase of a security of the debtor, it must be subordinated under this statute. The DOL first argues that following the result reached in *In re Amarex*, 78 B.R. 605 (W.D.Ok.1987), its claim may not be subordinated because it is derived from a subsequent rather than original issuance of stock. Second, the DOL argues that be-cause its claim alleges only a violation of the ERISA provisions and does not relate to the purchase or sale of the debtor's securities, section 510 is inapplicable.

## DISCUSSION

■ Section 510(b) of the Bankruptcy Code states in pertinent part:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, from damages arising from the purchase or sale of such a security, ... shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security....

In *In re Amarex, Inc.*, 78 B.R. 605 (W.D. Ok.1987), several hundred limited partners filed proofs of claim against Amarex and various related entities, alleging damages due to the violation of federal and state securities laws and asserting state law claims based on events which occurred in connection with Amarex's subsequent actions as operator and general partner. Certain trade creditors argued that these claims should be subordinated pursuant to 11 U.S.C. § 510(b). The bankruptcy court held that all claims of all limited partners should be subordinated because the class action plaintiffs "would have no claims against the debtor but for their purchase of the securities, and had the purchase not occurred they would not have the pendent common law claims". 53 B.R. 888, 891 (Bankr.W.D.Ok.1985). In reaching its decision, the court cited *In re THC Financial Corporation*, 679 F.2d 784, 787 (9th Cir. 1982), for the proposition that all theories of recovery based on the same set of operative facts and based on a continuing plan or scheme should be subordinated. On appeal, the United States District Court for the Western District of Oklahoma reversed the bankruptcy court, holding that while the limited partners' federal and state securities claims should be subordinated to those of other creditors, their state law claims based on the debtor's subsequent actions as operator and general partner

would not be so subordinated. 78 B.R. at 610. In so ruling, the court stated that,

The Bankruptcy Court's expansive interpretation of section 510(b) ignores the clear language of section 510(b), its underlying policies and the purposes for which it was enacted. Section 510(b) pertains only to claims based upon the alleged wrongful issuance and sale of the security and does not encompass claims based upon conduct by the issuer of the security which occurred after this event. *Id.*

 The DOL argues that section 510(b) is inapplicable because it deals with a subsequent rather than an original issuance of the debtor's securities. Thus, just as the district court refused to subordinate the limited partners' pendent common law claims in *Amarex*, the DOL urges this Court to refuse to grant the Committee's request for subordination in the instant case. The Court finds the DOL's argument flawed in two respects. First, the Court is unclear as to where the DOL derives the requirement that any alleged misconduct must be related to an *original* issuance of stock by the debtor. After an examination of both the statute and applicable case law, the Court concludes that such a narrow interpretation is a clever but unsupportable construction by the DOL. Second, regardless of whether such a requirement existed, the Court believes that the DOL has either misread or misapplied the result reached by the district court in *Amarex.*[4] In *Amarex,* the court refused to subordinate the limited partners' pendent state law claims because they occurred *subsequent* to the purchase and sale of a security. 78 B.R. at 610. In the instant case, all events which comprised the alleged misconduct took place within a two-day time period. This indicates that "all theories of recovery were based on the same set of operative facts and based on a continuing plan or scheme". *Amarex, Id.* at 608. Given this fact, this Court believes that the DOL's claims must be subordinated to those of other unsecured creditors.

 The DOL also contends that rather than being derived from an issuance and

sale of Lenco stock, its claim is based upon the debtor's alleged violation of various ERISA provisions arising from its involvement in the ESOP's purchase of the stock from a third party. The DOL argues that section 510(b) is inapplicable to the instant case. The Court notes that the application of this section is mandatory rather than discretionary. *In re Amarex,* 53 B.R. 888, 890 (Bankr.W.D.Ok.1985). Thus, if an action fits within the purview of section 510(b), that section *must* apply.

A claim may be subordinated pursuant to that section if the claimant seeks "damages arising from the purchase or sale of a security". In the instant case, the DOL claim seeks compensation for the ESOP's overpayment of funds to Mr. Ford in the sale of Lenco stock. Given that this claim is related to the purchase and sale of a security, this Court holds that the mandatory nature of section 510(b) dictates that the DOL's claim must be subordinated. Thus, the Court rejects the DOL's selective application of this mandatory provision. Accordingly, it is

ORDERED that the claim of the Department of Labor is subordinated to that of all other unsecured creditors and the Committee's Motion is GRANTED.

---

4. This Court in no way wishes to challenge the correctness of the decision reached in *Amarex.*