**In re AUDRE, INC., a California Corporation, Debtor.**

**In re AUDRE RECOGNITION SYSTEMS, INC., a Canadian Corporation, Debtor.**

**AUDRE RECOGNITION SYSTEMS INC. and Audre, Inc., Plaintiffs,**

**v.**

**Catherine CASEY, Steven Sanford, Steven Greenberg Artificial Intelligence Corporation, and Arstk, Inc., Defendants.**

**Bankruptcy No. 95–10048–B11. Adversary No. 96–90918–B11.**

United States Bankruptcy Court, S.D. California.

June 11, 1997.

---

Robert Barnes, Allen, Matkins, Leck, Gamble & Mallory, San Diego, CA, for defendants Sanford, Artificial Intelligence Corp., Greenberg and ARSTK, Inc.

Radmila A. Fulton, San Diego, CA, for Official Creditors' Committee.

Eric L. Hoffland, Peter Salmon, Noorigian & Associates, San Diego, CA, for Artificial Intelligence Corp. and ARSTK.

Dean R. Kirby, Hovey, Kirby, Thornton & Hahn, San Diego, CA, for Official Committee of Unsecured Creditors.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

This Court once again finds itself addressing a difficult issue in connection with the Audre, Inc. and Audre Recognition Systems, Inc. ("debtors or plaintiffs") bankruptcy proceeding. Catherine Casey requests that the First Cause of Action in this adversary complaint, seeking subordination of her family law judgment to all creditors of Audre and ARSI, be dismissed because it fails to state a claim,upon which relief can be granted. Plaintiffs, on the other hand, seek summary judgment on the adversary complaint, contending that the claims of the Catherine Casey Group (Casey Group/Ms. Casey) and Steven Greenberg and ARSTK (Greenberg/ARSTK) are subject to subordination to the other unsecured creditors. Plaintiffs argue that these claims are derived from the claimants' position as would-be equity holders in the debtor, and should be equitably subordinated because of their genesis.

### BACKGROUND

The adversary complaint alleges that the Casey Group judgment and the Greenberg/ARSTK claim are subject to subordination. The Casey group claim is based upon a family court judgment awarding damages against the plaintiff ARSI for conversion, fraud and breach of fiduciary duty. The family court found that shares of ARSI that Ms. Casey was to receive pursuant to a dissolution agreement had been fraudulently converted by her ex-husband, Thomas Casey, the former president of ARSI, that ARSI

Alan Van Derhoff, Sheppard, Mullin, Richter & Hampton, San Diego, CA, for plaintiff.

Ronald K. Van Wert, Newport Beach, CA, for defendant Casey.

participated in the loss of her shares, and that ARSI breached its fiduciary duty to her as a shareholder in the process. Plaintiffs have previously sought to have this claim disallowed or estimated at zero. A prior order entered by this Court denied those attempts by plaintiffs and allowed the claim at the value of the family court judgment for purposes of the bankruptcy reorganization as to plaintiff ARSI. The Court, however, did not allow the claim as to plaintiff Audre, which was not a party in the family court proceedings.

Steven Greenberg, through his company ARSTK, has a claim against plaintiff pending in state court. The basis for the claim is the loss of his right to shares of ARSI through fraud in a short-form merger. This Court has granted relief from the automatic stay to allow the liquidation of this claim in the state court.

Plaintiffs allege that these claims are based on claimants' position as shareholders and as such are subject to the subordination provisions of the Bankruptcy Code. Plaintiffs request that these claims be subordinated to other general creditors pursuant to this Court's equitable subordination powers under § 510(c). On February 10, 1997, this Court heard arguments on the applicability of the doctrine of equitable subordination under 11 U.S.C. § 510(c)[1] to the claims of Catherine Casey and Steven Greenberg. Thereafter, the matter was taken under advisement and the Court indicated that it would advise the parties of its decision in writing.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) & (O).

### ARGUMENTS OF THE PARTIES

Plaintiffs request summary judgment on their complaint, asserting that the basis of the Casey Group judgment and the Greenberg/ARSTK claim are equity interests that are subject to equitable subordination under § 510(c). Debtors claim that Ms. Casey's Family Law Judgment is an award for damages against ARSI for conversion, fraud and breach of fiduciary duty to Ms. Casey as a shareholder. The damages were the difference between the value of Ms. Casey's stock when she first demanded turnover and at the commencement of the trial multiplied by the total number of shares previously awarded to her.

Plaintiffs further maintain that the attorney fee award portion of the Casey group judgment is similarly based upon defendants' claims as shareholders and must also be subordinated. The attorney fee award is based on a percentage of the underlying award. Debtors assert that the attorney fees were a penalty for bad acts that the family court found were conducted by ARSI. Plaintiffs further submit that the Statement of Decision indicates that the fee award of about $3.4 million represents a penalty and not compensation to Ms. Casey. Thus, the fees are a non-pecuniary penalty and subordination of such a penalty is appropriate under § 726(a)(4).

The Greenberg/ARSTK claim is based on defendants' allegedly fraudulent scheme to freeze Mr. Greenberg and others out of ARSI and Audre through the failure to properly accept Greenberg's verbal offer to tender shares. Pursuant to his purchase of 180,000 shares in 1984, Greenberg also attained certain piggy-back registration rights and anti-dilution rights. Audre merged with a company that became ARSI in 1987. By virtue of his rights as an Audre shareholder, Greenberg asserts that he was entitled to retain his 180,000 shares and piggy-back rights, or he could receive at least 261,636 free-trading ARSI shares and 784,909 ARSI escrow shares, plus additional shares based on his anti-dilution rights.

The Greenberg complaint claims that plaintiffs and Mr. Casey failed to properly accept Greenberg's verbal offer to tender his Audre shares, and that they elected that

---

**1.** Hereinafter all references are to the United States Bankruptcy Code unless otherwise indi- cated.

Greenberg would keep his 180,000 shares subject to the piggy-back and anti-dilution rights subject to subsequent negotiations for the tender. Thereafter, plaintiffs conspired to freeze Greenberg out of ARSI and misstated and misrepresented the value of Audre and ARSI. Finally, Greenberg submits that he tendered his 180,000 shares of Audre stock based upon plaintiffs' continued representations that they were worthless and that the same result would be achieved by tendering or simply doing nothing. Every cause of action in the Greenberg/ARSTK complaint, according to plaintiffs, is based on Greenberg's rights as a shareholder.

Casey and Greenberg oppose the summary judgment motion and Ms. Casey seeks to dismiss the first cause of action of the adversary complaint which requests the subordination of the claim of her family law judgment. Ms. Casey claims that her judgment did not arise due to purchase or sale of ARSI stock, but out of division of community property assets and her judgment against ARSI for fraud and wrongful conversion. Ms. Casey argues that this judgment is based on tortious conduct independent of the purchase and sale of securities and, as such, it is beyond the application of § 510(b). Specifically, the claim is for the loss resulting from the fraud and conversion of her property, not from purchase of stock.

The crux of Ms. Casey's claim is that Mr. Casey allegedly obtained her community property shares of ARSI as a result of fraudulent conduct of ARSI in acts independent of the issuance of stock, long after Ms. Casey's rights had arisen, and long after the 1986 merger. Ms. Casey claims that Mr. Casey purchased these shares prior to 1987 and that the tortious conduct of Mr. Casey and ARSI took place in 1992–1993. Ms. Casey submits that she did not assume the risk that her ex-husband and the officers of the debtors would scheme to deprive her of community property. In fact, debtors have previously asserted in their summary judgment motion that Ms. Casey was not a shareholder in 1992. Ms. Casey further maintains that the claim based on her judgment is not subject to equitable subordination under § 510(c). She states that she has engaged in no inequitable conduct injuring creditors or giving her an unfair advantage. Ms. Casey submits that such conduct is required for the subordination of a claim under § 510(c) in this circuit. *In re Lazar*, 83 F.3d 306, 309 (9th Cir.1996).

Ms. Casey contends that the debtors are not the correct parties to seek subordination and that they have no standing to request equitable subordination because they are not creditors. *In re Weeks*, 28 B.R. 958, 960 (Bankr.W.D.Okla.1983). She submits that any subordination would require a case-by-case look at the fairness between Ms. Casey and each creditor seeking subordination. Ms. Casey submits that her claims were announced to the public in 1993, putting any creditor on actual or constructive notice of the risk of that claim.

Ms. Casey contends that the attorney fee portion of the judgment was based on the conduct of debtors during the trial. The award of attorneys' fees are consequential damages and considered part of a party's actual loss, whether hourly or on contingency. *Gotro v. R & B Realty Group*, 69 F.3d 1485 (9th Cir.1995). These fees were not punitive but compensatory for the loss of her existing property. Casey claims that the case relied upon by the plaintiffs applied the Bankruptcy Act and does not consider the limiting language contained in § 510(b) of the Code.

## DISCUSSION

The court will first address the issue of standing. Defendants allege that the proper party to seek equitable subordination is the creditor or the trustee acting as representative of the creditor, not the debtor. *Weeks v. Kinslow*, 28 B.R. 958, 960 (Bankr.W.D.Okla.1983); *citing In re Lockwood*, 14 B.R. 374 (Bankr.E.D.N.Y.1981). These cases held that the debtor had no standing to raise the equitable subordination issue. *Id.* However, these cases were chapter 7 proceedings. The present case is a chapter 11 and the debtors-in-possession are bringing this action. Under § 1107, a debtor-in-possession assumes almost all the rights and powers of a trustee. Thus, the chapter 11 debtor-in-possession has standing to bring an equitable subordination action. *Bunker Exploration*

*Co. v. Clarke (In re Bunker Exploration Co.)*, 42 B.R. 297, 302 (Bankr.W.D.Okla.1984). That decision rightly pointed out that to rule otherwise would deprive the debtor-in-possession of its rights and duties under the Code. *Id.* In the absence of compelling Ninth Circuit authority to the contrary, this Court holds that plaintiffs have standing to seek subordination on behalf of creditors of the estate under the rationale of *Bunker Exploration.*

The central premises of the argument advanced by the debtors are that prior to enactment of the Bankruptcy Code, the doctrine of equitable subordination had evolved to the point where it recognized that the nature of the creditor's claim, alone, could justify subordination. Specifically, the focus was on claims that derived from the creditor's status as an equity interest holder. It was concluded that the nature of claims of equity interest holders was different in kind from those of trade creditors who dealt with the debtor at arms length. The marketplace had understood that trade creditors always had a priority for payment over equity interest holders. Consequently, subordination of claims derived from the equity interests of a creditor to the claims of trade creditors was appropriate in some jurisdictions, regardless of whether any inequitable conduct was involved.

When the Bankruptcy Code was enacted, subordination was provided for in 11 U.S.C. § 510. Subpart(b) provides for mandatory subordination of claims "arising from rescission of a purchase or sale of a security ..., for damages arising from the purchase or sale of such a security, or for reimbursement ... on account of such a claim...." The conduct of the creditor is irrelevant under subpart(b). Subpart (c) permits subordination "under principles of equitable subordination...."

In this case, plaintiffs do not contend that mandatory subordination under § 510(b) is warranted. Rather, they argue that subordination is appropriate under § 510(c) "under principles of equitable subordination" because the claims asserted derive from an equity position, are thus different in kind from trade creditors, and should be subordinated to them just on the derivation of their claim. Plaintiffs assert that enactment of § 510 did not repeal prior equitable subordination decisions, and does not require some inequitable conduct by the creditor to be subordinated under § 510(c) when the creditor's claim arises from its equity relationship to the debtor. To resolve plaintiffs' contentions, a review of the evolution of subordination in bankruptcy is necessary.

As noted, the Bankruptcy Code provision that codifies the case law based doctrine of subordination of claims is § 510. This section provides for subordination by agreement, mandatory subordination and equitable subordination.

Subsection 510(b) sets out the requirements for the mandatory subordination of a claim and provides as follows:

> For purposes of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

In short, this subsection provides that a claim for damages or for contribution or reimbursement arising from the purchase, sale, or rescission of a purchase or sale of securities of the debtor or an affiliate is subordinated to senior or equal claims. The limiting language of this subsection suggests that not all claims brought by security holders are subject to mandatory subordination.

■ Subsection 510(c) codifies the doctrine of equitable subordination and provides:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or

part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.

Equitable subordination exists to offset an inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of bankruptcy results. *Trone v. Smith (In re Westgate–California Corporation)*, 642 F.2d 1174, 1177 (9th Cir.1981).

The mandatory and equitable subordination subsections were not statutory provisions of the former Bankruptcy Act. Subordination was the product of case law that was then codified with the implementation of the Bankruptcy Code. Prior to the Code, no distinction existed between mandatory and equitable subordination.

The Code separated subordination into several subsections. As stated above, subsection (b) specifically addressed damage claims by security holders connected with the rescission of a purchase or sale of securities. Subsection (b) provides that these claims are subordinated automatically. This raises a question of whether the codification of mandatory subordination for damage claims in connection with the rescission of a purchase or sale of securities under § 510(b) provides the only basis for subordination of claims brought by equity interests. In other words, may security holder claims that do not fall within § 510(b) be subordinated under equitable subordination pursuant to § 510(c)? If they may not, the plaintiffs' motion must be denied because they have acknowledged that they seek subordination pursuant to § 510(c) based on the defendants' position as security holders and, implicitly, that the claims do not fall within the parameters of § 510(b), compelling mandatory subordination. Certainly, the plaintiffs would so argue if they had any basis to do so.

■ This Court does not believe that the codification of subordination in the Bankruptcy Code was intended to limit the court's ability to subordinate claims. This is due to the fact that the opening language of subsection § 510(c) states that its grant of authority is given notwithstanding subsections (a) and (b). Such language indicates that even if a court finds that subordination is not mandatory because it did not arise from the rescission or purchase of a security, the court may still subordinate the claim on equitable principles. Therefore, defendants' claims are subject to this Court's subordination powers under § 510(c).

The Court must determine whether the claims of the defendants may be subordinated under § 510(c). Again, we must look to changes from cases under the Act to the Code to ascertain the requirements for equitable subordination. Mandatory subordination obviously does not require a finding of inequitable conduct by the claimant. However, such a finding has been a consistent requirement for equitable subordination. Plaintiffs argue that either there are a group of claims that are subject to equitable subordination under § 510(c) without a finding of wrongful conduct by the claimant, or that inequitable conduct is not truly a requirement for equitable subordination.

Ninth Circuit case law is replete with decisions finding that Inequitable conduct is a necessary element for equitable subordination. *See, Westgate–California Corporation v. First National Finance Corporation*, 650 F.2d 1040, 1044 n. 1 (9th Cir.1981) (where it is sought to invoke the court's equitable subordination power, the record must objectively disclose a threshold demonstration that the claimant has behaved inequitably, to the detriment of the debtor or its other creditors); *Unsecured Creditors' Committees of Pacific Express, Inc. v. Pioneer Commercial Funding Corporation (In re Pacific Express, Inc.)*, 69 B.R. 112, 115 (9th Cir.BAP 1986) (the claimant must have engaged in some type of inequitable conduct to support the equitable subordination of a claim); *In re Lazar*, 83 F.3d 306, 309 (9th Cir.1996) (equitable subordination generally requires a finding that the claimant engaged in some type of inequitable conduct).

Plaintiffs submit that there is also Ninth Circuit authority for the position that inequitable conduct is not necessary for subordination and that certain claims are subject to subordination based upon the nature of the claim itself. *Falcon Capital v. Osborne (In*

re THC Financial Corp.), 679 F.2d 784 (9th Cir.1982). Plaintiffs rely heavily on this case to support their position that the Casey judgment claim is subject to subordination. This case relied upon the state of the law under the Bankruptcy Act. At that time, as stated above, there was no codified distinction between mandatory and equitable subordination. In fact, the power of subordination was based upon development of case law. Cases decided before the Code pointed out that subordination was an equitable power and was therefore governed by equitable principles. *Trone v. Smith*, 642 F.2d 1174, 1177 (9th Cir.1981).

A discussion of the *THC Financial* case and its meaning in light of the enactment of the Code is useful to aid in determining the parameters of equitable subordination. In *THC Financial*, the claims of the shareholders of Falcon Capital Corp. ("FCC") were subordinated by the court. The claimants were the only shareholders of FCC, which merged with THC Financial. Claimants sold their FCC shares to THC Financial's subsidiary in return for 400,000 shares of THC Financial stock. Claimants received 100,000 shares upon the sale and were told the remaining 300,000 would be placed in escrow. These shares would be distributed to claimants when FCC's earnings reached an "earn-out" level. The claimants alleged that THC Financial and its subsidiary fraudulently conspired to cause FCC's earnings to fall below the "earn-out" level, thus depriving claimants of their remaining 300,000 shares. *THC Financial*, 679 F.2d at 785.

The court stated that the case of *In re U.S. Financial, Inc.*, 648 F.2d 515 (9th Cir.1980), was controlling and subordinated the claims. *THC Financial*, 679 F.2d at 785. The general rule stated in *U.S. Financial* and adopted by *THC Financial* was that stockholders claiming fraud in the issuance of stock were subordinated to general unsecured creditors based on ranking claims according to their legal and equitable merits. *Id.* Basing its ruling on the absolute priority rule, the court in *U.S. Financial* stated that shareholders bargain for equity-type rewards in exchange for equity-type risks, but general creditors

do not. *U.S. Financial, Inc.*, 648 F.2d at 520.

The claimants in *THC Financial* tried to distinguish their claims from the *U.S. Financial* decision in that their claims were not based upon THC Financial's issuance of the stock, but rather were against the issuer's subsidiary for an independent tort. *THC Financial*, 679 F.2d at 786. The court disagreed with claimant's attempted distinction and held that the rationale of *U.S. Financial* applied equally in claimant's situation. *Id.* The court stated that the claimants had bargained for equity-type profits and risks, including the risk of THC's fraud. *Id.* The court believed that placing claimants on a par with trade creditors would upset the expectations of creditors. *Id.*

Despite the fact that *THC Financial* relies on pre-Code law, plaintiffs claim that it controls the subordination issue. They assert that subordination of the Casey group judgment is warranted because her claim is based on her interest as a shareholder. Its basis is the alleged wrongful conversion of shares of ARSI that were her property. Had she not been wronged, she would have been a shareholder of ARSI. Similarly, the Greenberg/ARSTK claim is based solely on his position as a shareholder of Audre and his damages from being prevented from receiving shares of ARSI in the merger. Plaintiffs argue that defendants are defrauded stockholders, not victims of an independent tort. *THC Financial*, 679 F.2d at 787.

Plaintiffs also cite to case law decisions after the enactment of the Code that do not require inequitable conduct under § 510(c). The 7th Circuit has held that no inequitable conduct is required for subordination under § 510(c). *In re Envirodyne Industries, Inc.*, 79 F.3d 579 (7th Cir.1996). Plaintiffs claim that the facts of that case fit closely with the facts of the Greenberg/ARSTK claim and provide that it should be subordinated. In *Envirodyne*, defendants failed to tender their shares in a short-form merger, allowing their equity to be converted to debt. Even though they were technically creditors, the court ruled that they positioned themselves in an equity position and that was the nature of their interest. The court followed Seventh

Circuit precedent that equitable subordination is determined on a case-by-case basis without requiring inequitable conduct on the claimant in every instance. *In re Virtual Network Servs. Corp.*, 902 F.2d 1246, 1249–1250 (7th Cir.1990).

The Bankruptcy Code separated the doctrine of subordination into mandatory and equitable. Mandatory subordination reflects the *U.S. Financial* and *THC Financial* holdings that certain claims are subject to subordination regardless of inequitable conduct. Subsection 510(b) is a virtual recitation of the holdings in *U.S. Financial* and *THC Financial;* that claims based on damages from the purchase, sale, or rescission of a purchase or sale of securities will be subordinated. The similarity of the holdings of these cases and the language of § 510(b) supports the proposition that these cases do not apply to an analysis of § 510(c). These cases held that no inequitable conduct was required in exactly the circumstances that now give rise to mandatory subordination under § 510(b). It is clear that the holdings of both of these cases would still stand under the Bankruptcy Code. However, the holdings would be based upon §510(b), not § 510(c).

Further, both cases stated that their holdings did not indicate that a defrauded shareholder may never be classified with general unsecured creditors. *U.S. Financial*, 648 F.2d at 524; *THC Financial*, 679 F.2d at 786, n. 3. Based upon the subsequent codification of mandatory subordination, this Court does not believe that these cases control whether inequitable conduct is required for equitable subordination under § 510(c).

The Seventh Circuit case of *Envirodyne* is distinguishable on its facts. The defendants did not redeem their shares and technically became creditors by their own inaction. They failed to tender shares of stock in a corporation entering a short form merger. Thus their equity interest was converted into debt and they retained a right to redeem their canceled shares. In essence they were cashed-out voluntarily. The court held that no inequitable conduct was necessary and that subordination should be determined on a case-by-case basis. The court went on to

hold that the defendants accepted an equity position and the risks that go along with it.

While there was no wrongful conduct by the defendants in *Envirodyne*, there were also no allegations of fraud against the debtor in causing the failure to tender. The Seventh Circuit's analysis stated that the fact that the claims were really based on equity interest made the argument for subordination more compelling. However, the court did not state that all such claims are subject to subordination, only that a case-by-case analysis is required. This Court believes that fraudulent activity by a debtor that changes a claimant's equity status is a significant factor that could have changed the outcome of *Envirodyne*. Thus, the *Envirodyne* case is distinguishable both because it does not address Ninth Circuit law and on the facts of the case.

 In this Court's view, the present case is controlled by Ninth Circuit precedent. As stated above, this Circuit has required an element of inequitable conduct for equitable subordination. While many of these cases have not involved claims of interest holders, the cases have generally adopted the same three-part test in determining the appropriateness of equitable subordination. The test requires the court to find: 1) the claimant engaged in some type of inequitable conduct, 2) the misconduct injured creditors or conferred unfair advantage on the claimant, and 3) subordination would not be inconsistent with the Bankruptcy Code. *re Lazar*, 83 F.3d 306, 309 (9th Cir.1996). The court must find that all of these elements are present before subordinating the claim. *Id.*

The three part test is found throughout Ninth Circuit jurisprudence on the subordination issue. A 1986 BAP case further analyzed these requirements. *In re Pacific Express, Inc.*, 69 B.R. 112. It first outlined the general three part test for equitable subordination. *Id.* at 116. It then cited to a Fifth Circuit case that discussed three principles which may be considered in the application of the test. *Matter of Mobile Steel Co.*, 563 F.2d 692, 702 (5th Cir.1977). These principles are:

 a) Inequitable conduct directed against the bankrupt or its creditors may be sufficient

to warrant subordination of a claim irrespective of whether it was related to the acquisition or assertion of that claim.

b) A claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct.

c) The burden of proving all elements of subordination is on the objectant. If the validity of the underlying claim is in issue, the claimant has the burden of providing both the amount and legitimacy of his claim. However, once that burden has been satisfied, the objectant must prove by a preponderance of the evidence that the claimant engaged in such substantial inequitable conduct to the detriment of the debtor's other creditors that subordination is warranted.

*Pacific Express,* 69 B.R. at 116; *citing Mobile Steel,* 563 F.2d at 700–01. The analysis above supports the proposition that a shareholder claim may be subordinated under § 510(c) when it does not fit within the limitations of § 510(b). This discussion also focuses on the need of finding inequitable conduct and that a claim should only be subordinated to the extent necessary to offset the harm to the debtor and creditors. This Court agrees that this is the proper test to utilize in determining equitable subordination.

Finally, *Mobile Steel* went on to discuss the distinction between subordination of insider versus non-insider claims. The court stated that the distinction lies in the severity of misconduct required, holding that where the claimant is an insider, dealings with the debtor will be subject to more exacting scrutiny. *Id.* However, the court went on to state that the objecting party must still come forward with substantiation of misconduct. *Id.* This indicates that, even for insiders of the debtor, some inequitable conduct is necessary for subordination under § 510(c). No evidence of such conduct has been submitted by the plaintiffs.

The Supreme Court has also found that those cases requiring inequitable conduct are influential. *United States v. Noland,* — U.S. —, —, 116 S.Ct. 1524, 1528, 134 L.Ed.2d 748 (1996). It has so far, however, expressly declined to decide whether creditor misconduct is a prerequisite to equitable subordination. *Id.*; 4 *Collier on Bankruptcy* 510.01 (Matthew Bender 15th Ed. Revised 1996). Thus, in the absence of a contrary ruling by the Supreme Court, it is quite clear that inequitable conduct is presently a requirement for granting equitable subordination under § 510(c) in the Ninth Circuit.

This Court's conclusion is bolstered by parsing § 510 against the backdrop of the pre-Code decisions. Accepting for purposes of this discussion that the pre-Code decisions, including *THC Financial* reached and subordinated equity-derived claims broader in base than those included in mandatory subordination under § 510(b), it makes little sense to argue that equity-derived claims outside the reach of § 510(b) may still, in effect, be mandatorily subordinated under § 510(c). If Congress intended that any claim which derived from a creditor's equity interest be subordinated to trade creditors because of the respective nature of their claims, the Congress knew how to write for such a result. Instead, the Congress chose to more narrowly define the claims subject to mandatory subordination, and the plaintiffs acknowledge that the claims at issue are not subject to mandatory subordination under § 510(b) because of the nature of those claims. Yet they argue that the same equity-derived nature of the claims should require mandatory subordination under § 510(c) solely because of the nature of the claims, and without regard to whether the creditor engaged in any other conduct which would support equitable subordination. This Court disagrees.

 In order to justify equitable subordination, the Court is required to make specific findings and conclusions with respect to each of the three requirements stated in *Lazar.* Plaintiffs have made no showing of inequitable conduct by the defendants, that claimants are receiving an unfair advantage over other claimants, or that subordination of these claims would be consistent with bankruptcy law. Thus, the Casey judgment is not subject to equitable subordination.

■ The Greenberg/ARSTK claim is based on an alleged attempt by the officers to prevent shareholders of Audre from participating in ARSI and creditors being induced into believing that the Audre stock was worthless. If this claim was solely based on Greenberg being induced to believe that the value of his Audre shares were worthless and requested damages for rescission of a sale, the claim might be subordinated under § 510(b), had plaintiffs requested such relief. However, the Greenberg/ARSTK claim is really based on the assertion that he was defrauded by the plaintiffs' failure to properly accept the verbal offer to tender his shares for ARSI stock. Thus, when the merger took place, Greenberg was treated as if he had elected to retain his 180,000 shares of Audre and was not permitted a shareholder position in ARSI. As such, he was denied over 1,000,000 shares of ARSI stock. This merger was conducted after the purchase of his shares and any conversion rights were also designed after Greenberg's purchase. Accordingly, any fraud in connection with the merger is a tort independent of the purchase of the Audre stock by Greenberg.

Greenberg was a shareholder in Audre who was frozen-out of an equity position in ARSI. Greenberg alleges the debtors are responsible for his failure to have an equity interest in ARSI. The fact that the alleged damages are equal to what the equity interest would have been is not determinative. It was the fraud of the plaintiffs that prevented Greenberg's position as a security holder. Even though Greenberg had an equity position in Audre, he was prevented from such a position in ARSI. In contrast, the shareholders of *THC Financial* were shareholders who were prevented from receiving further earn-out shares through fraud. These earn-out rights were part of the original purchase and thus the fraud was in connection with the purchase of the stocks.

Greenberg was a shareholder trying to tender his shares for shares of ARSI. However, his claimed damages arose not from the purchase or sale of the securities but from the fraud of the debtors in preventing his transfer of the stocks he held in Audre into shares of ARSI. Thus his claim for fraud is not connected with any purchase of securities but through an alleged conspiracy to freeze him out of shares of ARSI. Because of this intervening fraud, his claim is not subject to subordination under § 510(b). Nor have plaintiffs sought subordination under that subsection.

■ Equity holders do not have a reasonable expectation of becoming the victims of an independent intervening tort merely because they are equity-holders. *In re Angeles Corp.*, 177 B.R. 920, 928 (Bankr. C.D.Cal.1995). This case adopted the holding of an Oklahoma case stating that fraud or other wrongful conduct occurring subsequent to the purchase of the security is not a claim "arising from" the purchase of a security for purposes of § 510(b). *See, In re Amarex, Inc.*, 78 B.R. 605 (D.C.W.D.Okla.1987). That case goes on to state that:

> 510(b) reveals a Congressional desire to shift to the shareholders the risk of fraud in the issuance and sale of a security—no more. The legislative history expressly focuses on the initial illegality and thus the automatic subordination required by section 510(b) should extend no farther. *Id.* at 609–610.

While this case discusses § 510(b), it shows that Congress only wished to shift the risk of fraud to shareholders in connection with mandatory subordination. Therefore, such risk is not attributable to the shareholder in a request for equitable subordination. As such, claims based upon conduct by the issuer occurring after the issuance are not covered by the mandatory provisions of § 510(b) and inequitable conduct is required to subordinate the claims under § 510(c).

### SUBORDINATION OF ATTORNEYS' FEES

The issue of subordination of attorneys' fees of the Casey group judgment is not clear. If the fee award is not meant as compensation and is a penalty, then it may be subordinated pursuant to § 726(a)(4). Plaintiffs assert that the fee award was for wrongful conduct at trial. Even if the award is compensation, however, it may still be subject to equitable subordination under § 510(c) if the fee award is unfair to credi-

tors. Further briefing is required on the nature of the attorney fees and the application of subordination under either § 510(c) or § 726(a)(4). Summary judgment is therefore not appropriate on the subordination of attorney fees at this time.

### CONCLUSION

The only party who has been determined to have engaged in wrongful conduct is ARSI. This Court will not construe the bankruptcy laws in a manner that deprives innocent claimants in favor of tortious debtors. The debtors' premise for subordination is the equity basis of defendants' claims. However, it was the plaintiffs who prevented defendants from becoming shareholders. It is beyond restatement that a party seeking equity must itself come to this Court with clean hands. Plaintiffs in this case have not met that most basic requirement of courts of equity.

A bankruptcy court may still equitably subordinate a claim of a shareholder under subsection (c), despite the existence of § 510(b). The test under subsection (c), however, does not change because the claim is that of a shareholder or insider. Under Ninth Circuit law, this test requires a finding of inequitable conduct. Plaintiffs have admitted, and this Court agrees, that defendants' claims do not fit under the mandatory subordination language of § 510(b). Because there is no inequitable conduct on the part of the defendants, their claims are not subject to equitable subordination under § 510(c).

Therefore, the motion for summary judgment by the plaintiffs is denied. Summary judgment will be granted to Catherine Casey and Steven Greenberg and ARSTK that their claims are not subject to subordination under § 510(c). The Court also grants Ms. Casey's motion to dismiss the first cause of action of the adversary complaint with prejudice. The Court denies summary judgment with respect to the subordination of the attorney fees awarded in connection with the Casey judgment. The adversary complaint may proceed as to this issue.

Counsel for the defendants will prepare a separate form of judgment consistent with the foregoing, and shall lodge and serve it within twenty (20) days of the date of service of this Memorandum Decision.

IT IS SO ORDERED.