In the matter of LERNOUT & HAUS-PIE SPEECH PRODUCTS, N.V., et al., Debtors.

Lernout & Hauspie Speech Products, N.V. and L & H Holdings USA, Inc., Plaintiffs,

v.

Janet Baker and James Baker, Defendants.

Bankruptcy Nos. 00–4397 to 00–4399. Adversary No. A–01–1042.

United States Bankruptcy Court, D. Delaware.

June 14, 2001.

Luc A. Despins, Milbank, Tweed, Hadley & McCloy, LLP, New York City, for Debtors.

Robert J. Dehney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Local Counsel for Debtors.

Karen C. Dyer, Boies, Schiller & Flexner, LLP, Orlando, FL, for Janet and James Baker.

Scott D. Cousins, Greenberg, Traurig, LLP, Wilmington, DE, Local Counsel for Janet and James Baker.

### MEMORANDUM OPINION ON MOTION TO DISMISS COMPLAINT AND MOTION FOR SUMMARY JUDGMENT

JUDITH H. WIZMUR, Bankruptcy Judge.

Before the court are two motions concerning the debtors' complaint for declaratory relief under 11 U.S.C. § 510(b). The defendants, Janet Baker and James Baker, seek to dismiss the debtors' complaint. The debtors cross-move for summary judgment. In the debtors' complaint for declaratory relief, filed April 13, 2001, the debtors, Lernout & Hauspie Speech Products N.V. ("L & H") and L & H Holdings USA, Inc. ("Holdings"), seek a declaration that the claims of defendants Janet and James Baker against L & H and Holdings, arising out of the Bakers' acquisition of L

& H common stock on or about June 7, 2000, (the "Bakers' merger claims") must be subordinated to all claims or interests that are senior or equal to claims or interests represented by L & H common stock, and that such claims have the same priority as L & H common stock for purposes of distribution under any plan of reorganization filed in these cases.

Until on or about June 7, 2000, the Bakers owned approximately 51% of the shares of Dragon Systems, Inc. ("Dragon") and its subsidiaries. On that date, pursuant to a merger agreement, Dragon was merged into Holdings, and the Bakers received shares of L & H common stock in exchange for their stake in Dragon. Following the merger, the companies experienced serious financial setbacks, alleged to be due to misstated financial statements, prompting Chapter 11 filings on November 29, 2000.

The Bakers have filed proofs of claim in both the L & H and Holdings cases, asserting separate claims not only for alleged misrepresentations and fraudulent conduct on the part of L & H and Holdings in connection with the merger agreement, but also against L & H and Holdings in connection with pre-merger conduct alleged to constitute tortious interference with Dragon's merger opportunity with another company, the Visteon Corporation.[1]

The Bakers' motion to dismiss the debtors' declaratory complaint is based on several grounds: 1) that the resolution of the complaint is premature because the Bakers' claim has not yet been allowed; 2) that a declaratory judgment for mandatory subordination may not be filed as an adversary proceeding under FED.R.BANKR.P.

7001(8) and (9) until the claim is allowed, and 3) that the Bakers' merger claim against Holdings should not be subordinated to the status of L & H common stock. In light of my decision herein to accept the Bakers' position that their merger claims against Holdings should not be subordinated to the status of L & H common stock, the Bakers' concerns about ripeness and procedure are somewhat moot. Nevertheless, I will address these issues summarily to complete the record.

1. *Ripeness.*

The Third Circuit has adopted a tri-part test to determine the ripeness of an issue for the entry of declaratory judgment. The elements which must be established by the plaintiff include the adversity of interest, the conclusiveness of the judgment to be issued, and the utility of the judgment to be rendered. *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1463 (3d Cir.1994); *Step–Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643, 647 (3d Cir. 1990). On this record, I conclude that the three elements have been sufficiently demonstrated to constitute an "actual controversy" within the contemplation of the Declaratory Judgment Act. 40 F.3d at 1463. *See* 28 U.S.C. § 2201.

First, as to the adversity of interests, we now have a proof of claim based on merger claims filed in the Holdings case by the Bakers. The contention by the debtors that the claim should be subordinated to the level of L & H stock raises a definite and concrete controversy between the parties, notwithstanding the fact that the claim may be disputed and has not yet been allowed. Second, the fact that other

---

1. At the time of oral argument on this matter, June 5, 2001, the Bakers' proofs of claim had not yet been filed. The proofs of claim, apparently filed on June 11, 2001, the bar date for the filing of claims, have now been made of record in this proceeding by letter submission from debtors' counsel dated June 13, 2001.

claims remain to be resolved between the parties, including the Bakers' claim against Holdings for pre-merger tortious interference, does not defeat the conclusiveness of the resolution of the subordination issue as to the Bakers' merger claims. Third, the utility of the resolution of the subordination issue is self-evident, particularly from the standpoint of assisting the debtors in formulating Chapter 11 plans of reorganization for Holdings and L & H.

### 2. *Filing Adversary Proceeding.*

FED.R.BANKR.P. 7001 provides a list of ten types of litigated matters which qualify as adversary proceedings. This list is considered to be "exclusive." *See, e.g., In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 993, 998 (S.D.N.Y.1992); *In re Envirodyne Indus., Inc.,* 174 B.R. 955, 960 (Bankr.N.D.Ill.1994) (any matter not specifically listed in Rule 7001 "falls under the catch-all term 'contested matter.'"); *In re Johns–Manville Corp.,* 53 B.R. 346, 352 (Bankr.S.D.N.Y.1985) ("Bankruptcy Rule 7001 ... contains the exclusive list of matters which are classified as adversary proceedings."). Under Rule 7001, proceedings which qualify as adversary proceedings include, as is relevant here:

> (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;
>
> (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing.

FED.R.BANKR.P. 7001. Rule 7001(9) applies only where the underlying action qualifies under one of the other sections. *See* ADVI-SORY COMM. NOTE TO FED.R.BANKR.P. 7001 (1983).

As noted, Rule 7001(8) limits subordination proceedings to allowed claims. However, the mandatory subrogation statute sought to be imposed upon the Bakers' claim by the debtors, 11 U.S.C. § 510(b), is not limited to "allowed" claims. Unlike § 510(c), governing equitable subordination, which is available only against "allowed claims," [2] § 510(b) requires subordination of claims arising from the purchase or sale of a security of the debtor or the debtor's affiliate, regardless of whether an allowance process has been completed to resolve and liquidate disputed claims. Section 510(b) provides that:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510.

Notwithstanding the proposition that Rule 7001 is generally considered to be an exclusive list of permissible adversary proceedings, the Bakers' contention that the complaint herein must be dismissed because Rule 7001(8) permits subordination actions only for allowed claims must be rejected. The statute, § 510(b), does not limit mandatory subrogation to

---

**2.** Section 510(c) provides: "Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510.

"allowed" claims. Where the issue is otherwise ripe, the consideration of whether a particular claim must be subordinated under § 510(b) for distribution purposes may proceed even where the claim has not yet been allowed. Because Rule 7001(8) appears to limit subordination complaints to allowed claims, the appropriate procedural vehicle for resolution of the issue is a contested matter under FED.R.BANKR.P. 9014. That rule provides in pertinent part:

> In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.

I will resolve the debtors' complaint, the Bakers' motion to dismiss the complaint and the debtors' motion for summary judgment as contested matters under Rule 9014. There has been no suggestion by either party about inadequate notice, insufficient opportunity to respond, unmet discovery needs, or any other procedural concerns. No facts are disputed. To fail to resolve the legal question presented is to unnecessarily elevate form over substance.

As many other courts in similar circumstances have said, I will decline to "elevate the form of the proceeding ..., if the substance of the hearing on that issue is such that the objecting party has been afforded due process." *In re Swizzlestick, L.L.C.*, 253 B.R. 264, 267 (Bankr.W.D.Mo. 2000). Courts have routinely allowed matters to proceed that have been filed as contested matters when they should have been filed as adversary complaints, where no prejudice has been found. *See, e.g., In re Cannonsburg Environ. Assocs., Ltd.*, 72 F.3d 1260, 1264–65 (6th Cir.1996); *In re*

*Orfa Corp.*, 170 B.R. 257, 275–76 (E.D.Pa. 1994). I find the rationale equally applicable here. *See also In re Ebel*, 144 B.R. 510, 513–14 (D.Colo.1992) ("I acknowledge that the issue perhaps should have been resolved in a contested hearing rather than an adversary proceeding ... however, I see no reason to elevate form over substance."). The Bakers' objection in this regard is overruled.

### 3. *Mandatory Subordination.*

■ The crux of the controversy presented here is whether 11 U.S.C. § 510(b) requires the subordination of the Bakers' merger claims against Holdings to the general unsecured creditors of Holdings or to the general unsecured creditors of L & H. The issue may be resolved under Fed. R.Civ.P. 12(b)(6), which permits a motion to dismiss a complaint to be "treated as one for summary judgment and disposed of as provided in Rule 56", where matters outside the pleadings are presented to and considered by the court, and where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

The framework for the discussion is not disputed. Holdings is the wholly-owned subsidiary of L & H. Holdings existed prior to the Dragon merger, and is the entity into which Dragon was merged. Both parent L & H and subsidiary Holdings are debtors in Chapter 11 cases. The two cases have been administratively but not substantively consolidated. The Bakers' merger claims are asserted against each of the debtors, L & H and Holdings.[3] The Bakers are not equity security holders in Holdings, but do hold L & H stock as a result of the merger agreement between

---

**3.** The debtors acknowledge that subordination applies only to the Bakers merger claims. Other claims against Holdings, such as tortious interference with economic advantage, involving the Visteon Corporation, are not implicated in the subordination quest.

the Bakers, L & H and Holdings. The Bakers do not dispute that their claims against L & H arising from the Dragon merger must be subordinated to general unsecured creditors of L & H. Nor do they dispute that their claims against Holdings must be subordinated to general unsecured creditors of Holdings. According to the debtors, however, subordination must "follow the securities," meaning that the Bakers' claims against Holdings must be subordinated to the level of the securities they hold, i.e., L & H common stock.

▮ It is axiomatic that the plain language of a statute controls, and that where congressional intent is clear, reference to legislative history and pre-Code practice is not necessary, " 'the sole function of the courts [being] to enforce [the statute] according to its terms.' " *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). However, where there is ambiguity in the statute, recourse to other means of ascertaining congressional intent is necessary. Here, each party contends that the language of the mandatory subordination provision supports their position. According to the debtors, a creditor's damage claims arising from the purchase of a security of the debtor's affiliate must be subordinated to "follow the security". In other words, because the statute uses the language "such a security" to refer to the security actually purchased, any claims for damages arising from the purchase, even claims against the debtor where the shares of stock purchased were shares of the debtor's affiliate, must have the same priority as the common stock that was purchased. In contrast, the Bakers propose that the "debtor" in § 510(b) is Holdings, while the "affiliate" is L & H. Although it is acknowledged that the Bak-

ers' merger claim arises from the purchase of a security of the debtor's "affiliate", the Bakers contend that their claim against Holdings should, in the words of the statute, have "the same priority as common stock" of the debtor Holdings, rather than common stock of the parent L & H. Either interpretation is sustainable on the basis of the language of the statute. Therefore, I must review legislative history, pre-Code practice and judicial applications of the statute in other contexts.

Prominent in the legislative history of the Bankruptcy Code of 1978 is the Report of the Judiciary Committee of the House of Representatives, which reported the Bankruptcy Bill favorably to the full house on September 8, 1977. The Report was expressly intended "[u]ltimately ... [as] a great aid to courts in determining the legislative intent behind the provisions of the bill that become law." C APP. LAWRENCE P. KING, COLLIER ON BANKRUPTCY, INTRODUCTION To H.R.REP. No. 95–595, 95TH CONG. 1ST SESS. (1977), U.S.CODE CONG. & ADMIN.NEWS 1977, p. 5963 (15TH ED. REV.2001). On the issue of the status of a security holder who seeks to rescind his purchase of securities or to sue for damages based on such a purchase, the report recommended mandatory subordination of the status of a security holder to the claims of general unsecured creditors. The report stated:

> [T]he risk of illegality in securities issuance should be borne by those investing in securities and not by general creditors. Placing rescinding share holders on a parity with general creditors shifts the risk of an illegal stock offering to general creditors. The general creditors have not had the potential benefit of the proceeds of the enterprise deriving from ownership of the securities and it is inequitable to permit shareholders that have had this potential benefit to shift the loss to general creditors.

. . .

. . . The bill subordinates in priority of distribution rescission claims to all claims that are senior to the claim or interest on which the rescission claims are based.

H.R.REP. No. 95–595, 95th CONG. 1ST SESS. at 195–96 (1977), U.S.CODE CONG. & AD-MIN.NEWS 1977, pp. 5963, 6156–6157.

The report focuses on the priority of claims in a debtor's case, rather than on the nature or position of the securities purchased, and tends to support the Bakers' position that their claim against the debtor Holdings should be subordinated to the claims of general unsecured creditors of Holdings, and should be treated pari passu with Holdings equity security holders.

The pre-Bankruptcy Code case of *In re THC Financial Corp.*, 679 F.2d 784 (9th Cir.1982) is instructive here. As the debtors suggest, the *THCF* case is indeed "factually on all fours" in many respects with the case presented here. However, the *THCF* holding favors the Baker position.

In the *THCF* case, the shareholders of Falcon Capital Corporation ("FCC") sold their shares in FCC to the parent company, THC, in exchange for becoming equity holders of THC. THC then transferred the FCC assets to a wholly-owned subsidiary, THC Financial Corporation ("THCF"). The recission damages claims asserted by the Falcon claimants were asserted against both THC and THCF. The claims against the parent, THC, were resolved. The only issue before the district court in the case of the wholly-owned subsidiary, THCF, was whether the rescission damages claims of the Falcon shareholders should be subordinated as a matter of law to the general unsecured creditors of THCF. The district court answered in the affirmative, and was affirmed by the 9th Circuit Court of Appeals.

To argue that the *THCF* case supports the proposition that the Baker claims against the wholly-owned subsidiary, Holdings, must be relegated to the status of the common stock of the parent, L & H, the debtors cite language in the *THCF* decision suggesting that where a claimant holds the parent's stock, the claimant's position against the subsidiary must be relegated to the status of the parent's stock. The court reflected:

The stock of THCF [the wholly-owned subsidiary] is an asset of THC. THC's claims on THCF, however, are subordinate to the interests of THCF's creditors. Thus, THC's creditors are subordinate to THCF's creditors in the line for THCF assets. As shareholders of THC, appellants should stand behind THC creditors in the line for THCF assets.

679 F.2d at 786–87.

Notwithstanding the apparent support for the debtors' position that the subordination must "follow the security", the expression of the *THCF* court regarding the impact of the subordination in the *THCF* case is pure dictum. The Court of Appeals was not called upon to resolve matters relating to the parent company, THC. The claims of the Falcon shareholders against the parent had been previously resolved. The only issue was the treatment of the Falcon claimants under the plan of reorganization submitted by the subsidiary THCF. The Court of Appeals affirmed the district court's approval of the proposed treatment of the claims as subordinate to general unsecured claims of THCF,[4] directing subordination "in each case," refer-

---

4. *In re THC Financial Corp.*, No. 76–0493 at 9 n. 4 (D.Haw. July 30, 1980) (order denying motion for reconsideration of summary judgment, as amended), submitted by the debtors by way of supplement to previous arguments, as Exhibit C to their letter dated June 8, 2001.

ring to the parent and the subsidiary, and holding that the Falcon's claim against the subsidiary "must be subordinated to the claims of THCF's depositors". *Id.*

In cases following the enactment of the Bankruptcy Code, courts have reaffirmed the two main reasons for mandatory subordination: "1) the dissimilar risk and return expectations of shareholders and creditors; and 2) the reliance of creditors on the equity cushion provided by shareholder investment." *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 830 (9th Cir. 2001). It has been emphasized that the risk of illegality in the context of the purchase or sale of securities must be born by those investing in securities. *See, e.g., In re Wisconsin Barge Line, Inc.*, 76 B.R. 142, 144 (Bankr.E.D.Mo.1987). The focus of shifting the risk to investors has not necessarily required mandatory subordination to the level of the securities actually purchased or sold. Rather, in several cases cited by the Bakers, once the claimant was identified as one to whom § 510(b) applied, i.e., one who holds a claim arising from the sale or purchase of a security, the claim was subordinated to general unsecured creditors in the debtor's case.

For example, in *Wisconsin Barge*, prior to the filing of bankruptcy, the debtor corporation sold all of the shares of two wholly-owned subsidiaries to Lake Shore Equipment Distributors, Inc. ("Lake Shore"). Lake Shore sued the debtor for rescission and damages in connection with the sale of the non-debtor affiliates' securities. The court held that the claim of Lake Shore, arising as it did from a stock purchase agreement, must be subordinated to the claims of general unsecured creditors in the debtor's case. The fact that the claimant held securities of the non-debtor affiliates was irrelevant. The goal was to protect the general unsecured creditors of

the debtor from claims arising from illegal purchases or sales of securities.

Similarly, in *In re Einstein/Noah Bagel Corp.*, 257 B.R. 499 (Bankr.D.Ariz.2000), the creditor's claim arose from the failure of the debtor to purchase equity units in favor of the creditor, causing a damage claim to arise in favor of the creditor. Noting that "a liberal construction of section 510(b) is in keeping with Congress' purposes in enacting this section" *Id.* at 508, the court concluded that "the critical point is that the claim arises because of the inability to sell or the failure to purchase the security itself, not merely because the party asserting the claim may hold an equity security of the Debtor." *Id.*

Here, the Bakers acknowledge that their claim against L & H must be subordinated to the general unsecured creditors of L & H. As well, they acknowledge that their claim against Holdings, arising as it does from the merger agreement, and putting aside other claims they may hold against Holdings unrelated to the merger agreement, must also be subordinated to the general unsecured creditors of Holdings. However, the fact that the Bakers do not hold an equity security position in Holdings does not preclude the treatment of their claim against Holdings in pari passu with the existing common stock of Holdings.

In fact, as the Bakers correctly contend, it is undisputed that the L & H stock held by the Bakers is stock of an affiliate of the debtor Holdings, as that language is used in § 510(b). Debtor's position that the Bakers' claim against the debtor Holdings must be subordinated to the level of L & H stock would effectively disallow the claim in the Holdings case. Such a reading of the provision would convert the term "subordinate", as used in § 510(b), into "disallow". In § 502 of the Bankrupt-

cy Code, provisions are made for the disallowance of claims for various reasons. No such provision is made for claims based on securities fraud. More consistent with the stated congressional intent is a conclusion that the Bakers' claim against the debtor Holdings, arising from the purchase of L & H securities, must be subordinated to general unsecured claimants in Holdings, but may be treated pari passu for distribution purposes with other equity security holders of Holdings.

For these reasons, an order will be entered granting the Bakers' motion to dismiss the complaint, denying the debtor's motion for summary judgment, and entering judgment in favor of the Bakers establishing the subordination of their merger claims against Holdings in the Holdings case. Counsel for the Bakers shall submit a form of order.