## In re VF BRANDS, INC.,
## et al., Debtors.

### Nos. 01–285(MFW) to 01–292(MFW).

United States Bankruptcy Court,
D. Delaware.

April 12, 2002.

Sally McDonald Henry, Frederick Morris, Skadden, Arps, Slate, Meagher & Flom, LLP, New York City, Anthony W. Clark, Robert A. Weber, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, DE, for debtors.

Michael R. Lastowski, Duane Morris & Heckscher, LLP, Wilmington, DE, Mitchell A. Seider, Kramer, Levin, Naftalis & Frankel, LLP, New York City, for Official Committee of Unsecured Creditors.

Andre G. Bouchard, Bouchard, Margules & Friedlander, Wilmington, DE, Peter S. Goodman, Andrews & Kurth, LLP, New York City, for VFB, LLC.

Tobey M. Daluz, Jan A.T. van Amerongen, Jr., Reed Smith, LLP, Wilmington, DE, Samuel M. Stricklin, Neligan Stricklin, LLP, Dallas, TX, for Trustee of the Money's Trust.

## OPINION [1]

MARY J. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motion of VFB LLC, the successor in interest to VF Brands, Inc., Vlasic Foods International, Inc. ("VFI"), and certain of their affiliates (collectively "the Vlasic Debtors") to determine the classification of the claim filed by Money's Trust and to object to that claim pursuant to sections 502(b) and 510(b) of the Bankruptcy Code. For the reasons stated below, we sustain the objection and subordinate the claim pursuant to section 510(b).

## I. FACTUAL BACKGROUND

In 1997 and 1998, Campbell's Soup Company spun off various business operations. As a result of the spin-off, Vlasic Farms, Inc. ("Vlasic Farms") became a wholly-owned subsidiary of VFI. Subsequently, pursuant to a Stock Purchase Agreement dated December 17, 1999, Money's Foods (U.S.) Ltd. and Money's Mushrooms Ltd. purchased all the stock of Vlasic Farms from VFI for $50 million.

On November 2, 2000, Money's Foods (U.S.) Ltd. and certain of its affiliates ("the Money's Foods Debtors") filed petitions under Chapter 11 of the Bankruptcy Code. On January 29, 2001, the Vlasic Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On July 25, 2001, the Court confirmed the liquidating plan of reorganization of the Money's Foods Debtors, pursuant to which Money's Trust was created to pursue

claims of the Money's Foods Debtors. On November 16, 2001, the Court confirmed the Vlasic Debtors' plan of reorganization pursuant to which shareholders will receive no distribution.

On September 12, 2001, a notice was filed in the Vlasic Debtors' bankruptcy case that the Moneys' Foods Debtors had transferred their claims to Money's Trust and on October 9, 2001, Money's Trust filed its amended proof of claim against the Vlasic Debtors. That claim is based on asserted breaches of the Stock Purchase Agreement and an assertion that the Stock Purchase Agreement was itself a fraudulent conveyance which rendered Money's Foods insolvent. The Vlasic Debtors objected to the claim asserting, inter alia, that the claim must be subordinated and treated as a shareholder claim pursuant to section 510(b). A hearing was held on March 14, 2002, at which time we heard oral argument on the section 510(b) issue.

## II. JURISDICTION

This Court has jurisdiction over this Motion, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (B), and (O).

## III. DISCUSSION

Section 510(b) provides:

For the purpose of distribution under this title, a claim ... for damages arising from the purchase or sale of a security of the debtor or an affiliate of the debtor ... shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security, except that if such

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

■ Both parties agree that the claim of Money's Trust is premised on alleged damages arising from the purchase of the stock of Vlasic Farms, which was an affiliate of the Vlasic Debtors. The Vlasic Debtors therefore argue that the claim must be subordinated to the claims of the general unsecured creditors and treated in the class of shareholder claims pursuant to their plan. *See, e.g., In re Geneva Steel Co.,* 281 F.3d 1173 (10th Cir.2002); *In re Telegroup, Inc.,* 281 F.3d 133 (3d Cir. 2002); *In re Betacom of Phoenix, Inc.,* 240 F.3d 823 (9th Cir.2001).

Money's Trust asserts, however, that the Vlasic Debtors' argument ignores part of section 510(b). That section provides that the claim is only "subordinated to all claims or interests that are *senior to or equal to the claim or interest represented by such security,* except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b)(emphasis added). Money's Trust asserts that its claim, as a shareholder of Vlasic Farms, would properly be subordinated to the general unsecured creditors of Vlasic Farms (which is not one of the Vlasic Debtors) but is not properly subordinated to the general unsecured creditors of Vlasic Farms' former parent, VFI, because it was never a shareholder of VFI. While it concedes that shareholders of VFI are subordinate to creditors of VFI, it argues that there is no general principle which states that claims of general unsecured creditors of a parent are senior to the claims of shareholders of its subsidiary. Therefore, Money's Trust argues that the language of section 510(b) does not mandate that its claims be subordinated to those creditors.

However, Money's Trust itself is ignoring part of the language of section 510(b)

in this analysis: the subordination that section mandates is to claims that are "senior to or equal to" the claims of Money's Trust. It is true that generally shareholders of a subsidiary have no claim against the parent and thus are not part of any priority scheme of claims against the parent. In this case, however, the shareholders of the subsidiary do assert a claim against the parent based on fraudulent conveyance and breach of the Stock Purchase Agreement. In the absence of section 510(b), such a claim would have the same priority as any other general unsecured claim against the parent. Therefore, such a claim is one which is "equal to" the claims of the general unsecured creditors of the parent, VFI. Applying section 510(b) requires that the claim of Money's Trust (which is based on damages from the purchase of stock of an affiliate of the Vlasic Debtors) must be subordinated to the claims of the general unsecured creditors of the Vlasic Debtors which in the absence of that section would be equal in priority to its claim. Further, section 510(b) provides that if the claim is common stock, it will be given the same priority as common stock. Thus we conclude that the Money's Trust claim against the Vlasic Debtors must be treated on the same level as the Vlasic Debtors' shareholders claims are treated.

Money's Trust argues, however, that it should not be treated on a par with the Vlasic Debtors' shareholders, because it never bought stock in the Vlasic Debtors, but instead bought the stock of a separate subsidiary. However, we do not find this significant. The language of section 510(b) applies equally to claims arising from purchase of the stock of an affiliate, including a subsidiary, of the debtor as it does to purchase of stock of the debtor itself.

■ Further the policy considerations behind the passage of section 510(b) apply

equally to the purchase from VFI of the stock of its subsidiary as to the purchase from VFI of its own stock. As noted by the Third Circuit in *Telegroup:*

> In enacting § 510(b), Congress intended to prevent disaffected equity investors from recouping their investment losses in parity with general unsecured creditors in the event of bankruptcy.... Were we to rule in claimants' favor in this case, we would allow stockholders in claimants' position to retain their stock and share in the corporation's profits if the corporation succeeds, and to recover a portion of their investment in parity with creditors if the corporation fails.... The fact that claimants chose to invest in equity rather that debt instruments suggests that they preferred to retain the right to participate in profits, and with it, the risk of losing their investment if the business failed.

281 F.3d at 142.

Similar policy reasons for subordination apply to the claim of Money's Trust. It chose to invest in the stock of Vlasic Farms, rather than a debt instrument. If it had merely loaned money to Vlasic Farms, its fraud claim against Vlasic Farms (as well as the Vlasic Debtors to the extent they bore any culpability in the transaction) would have been a general unsecured claim against both. Instead, it invested in equity in Vlasic Farms (an affiliate of the Vlasic Debtors) with the expectation that it would reap the profits. Consequently, it must be willing to accept the consequences of its status as a shareholder: the possibility that it would lose its investment. To hold, as Money's Trust asserts, that it retains an unsubordinated general unsecured claim against VFI for damages arising from its investment in Vlasic Farms would give it the best of both worlds—the right to share in profits if

Vlasic Farms succeeded and the right to repayment as a creditor (from VFI) if it failed. It was exactly this scenario that Congress sought to avoid by subordinating such claims through section 510(b). Consequently, we conclude that under section 510(b) the claim of Money's Trust is properly subordinated to the claims of the unsecured creditors of the Vlasic Debtors.

The Vlasic Debtors cite two cases which have dealt with the application of section 510(b) to claims of purchasers of an affiliate's stock. *See, e.g., In re Lernout & Hauspie Speech Products, N.V.,* 264 B.R. 336 (Bankr.D.Del.2001); *In re Wisconsin Barge Line, Inc.,* 76 B.R. 142 (Bankr. E.D.Mo.1987).

The facts of *Wisconsin Barge* are identical to those here. In *Wisconsin Barge,* the claimant bought the stock of two subsidiaries from their parent. 76 B.R. at 143. When the parent filed bankruptcy, the claimant asserted a claim for fraud arising from its purchase of the stock of the subsidiaries. *Id.* The *Wisconsin Barge* Court applied section 510(b) and subordinated the claims. *Id.* at 145. However, Money's Trust argues that the claimant did not raise the issues which Money's Trust does nor did the Court in *Wisconsin Barge* address them.[2] Therefore, it asserts that the case is not persuasive.

The Vlasic Debtors also cite the *Lernout & Hauspie* case, where the Court did address the issues raised here. In that case, the claimants bought stock in the parent rather than in the subsidiary. 264 B.R. at 340. When both entities went into bankruptcy, the claimants asserted fraud claims against *both* the parent and subsidiary. *Id.* at 338. The debtors asserted that the claims had to be subordinated to the level

---

**2.** The Vlasic Debtors assert that the same argument that Money's Trust makes *was* raised, although the *Wisconsin Barge* Court did not address it.

of the claimants' security, namely to the level of shareholder in the parent and, therefore, could not share in any recovery against the subsidiary until the subsidiary's and the parent's creditors had been paid in full. *Id.* at 341. The Court concluded that the claim against the parent corporation should be subordinated to the parent's creditors and that the claim against the subsidiary should be subordinated to the subsidiary's creditors. *Id.* at 344. The Vlasic Debtors assert that this supports subordination of the Money's Trust claim against VFI (the parent) to the level of its shareholders' claims.

Money's Trust asserts that the conclusion in *Lernout & Hauspie* is correct but cannot be applied to this case. In this case, Money's Trust is asserting a claim against the parent for sale of stock of its subsidiary, whereas in *Lernout & Hauspie* the claim was against the subsidiary based on sale of the stock of a parent. Money's Trust asserts that the *Lernout & Hauspie* Court was correct to subordinate the claim against the subsidiary only to the creditors of the subsidiary because creditors of a subsidiary are senior to shareholders of its parent (which was the security held by the claimant). Here, however, Money's Trust asserts that it is not correct to subordinate the claim against the parent to the creditors of the parent because there is no similar principle stating that creditors of the parent are senior to the shareholders of the subsidiary (which is the security held by it).

We reject this argument because the analysis done by Money's Trust was not the basis of the decision in *Lernout & Hauspie*. Rather, the *Lernout & Hauspie* Court made its subordination analysis based on its determination that section 510(b) has to be read with respect to each debtor. Namely, it held that application of section 510(b) to the claim against the debtor/parent mandated only that that claim be subordinated to the creditors of that entity and that application of section 510(b) to the claim against the debtor/subsidiary mandated that that claim be subordinated to the creditors of that entity. *Id.* at 343–44. Applying that same reasoning here requires that we subordinate the Money's Trust claim against VFI to the VFI creditors.

Money's Trust also cites a law review article to support its argument that its claim should not be subordinated to the creditors of the parent, VFI. It quotes that article as concluding that if section 510(b) "is applied to fraud claims arising from the purchase of common stock of subsidiaries, the reference that these claims must be subordinated to the level of common stock means not common stock of the parent, but common stock of the subsidiary [which] ... are senior to all claims of parent creditors...." Nicholas L. Georgakopoulos, *Strange Subordinations: Correcting Bankruptcy's 510(b)*, 16 Bankr. Dev. J. 91, 121 (1999).

There are several fallacies with this argument. First, the quote attributed to Professor Georgakopoulos is not a statement of what section 510(b) provides, but is rather what he argues it should be changed to provide (either legislatively or judicially). *Id.* In fact, earlier in his article, Professor Georgakopoulos states that section 510(b) mandates that claims held by a subsidiary's shareholders be treated on a par with the claims of the parent's shareholders. *Id.* at 105–06. Furthermore, his argument appears to be based on the false premise that section 510(b) requires the subordination of any claim against the subsidiary for fraud to the level of a shareholder claim of the parent, without doing the analysis which the Court in *Lernout & Hauspie* did, namely considering the claim against the subsidiary separate from the claim against the parent

and subordinating each to their respective creditors.

Thus, we conclude that none of the authority cited by Money's Trust persuades us to conclude that its claim against the Vlasic Debtors should not be subordinated to the creditors of the Vlasic Debtors. Instead, the plain language of section 510(b) and the analysis in *Lernout & Hauspie* convince us that the claim which Money's Trust has against the Vlasic Debtors must be subordinated to the creditors of the Vlasic Debtors and treated on a par with their shareholders.

## IV. CONCLUSION

For the foregoing reasons, we sustain the Vlasic Debtors' objection and subordinate the claim of Money's Trust to the claims of the general unsecured creditors of the Vlasic Debtors and determine that it is a claim in class 6 of their Plan of Reorganization.

An appropriate order is attached.

### ORDER

AND NOW, this **12TH** day of **APRIL, 2002,** upon consideration of the Motion of VFB LLC, the successor in interest to VF Brands, Inc., Vlasic Foods International, Inc. ("VFI"), and certain of their affiliates (collectively "the Vlasic Debtors") to determine the classification of the claim filed by Money's Trust and to object to that claim pursuant to sections 502(b) and 510(b) of the Bankruptcy Code, and the Response of Money's Trust thereto, it is hereby

**ORDERED** that the Motion is hereby **GRANTED** and the claim of Money's Trust shall be subordinated under section 510(b) and treated as a class 6 shareholder claim.